U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

FEB 1 6 2012

CHRIS R. JOHNSON, CLERK

BY _____
DEPUTY CLERK

United States District Court for the

Western District of Arkansas

David Stebbins                    Plaintiff

vs                Case No. 12-3022

Boone County, AR              Defendant

## COMPLAINT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following complaint against the County of Boone, Arkansas for numerous violations of Title II of the Americans with Disabilities Act, and numerous Section 1983 claims.

## BACKGROUND

From the dates of February 2010 to February 2011, I sued Jason Jones for discrimination. The case number for that case is 10-3041 in this court.

Jason Jones works at this very jail. In fact, if you look at the court records in case no. 10-304 you will find that it was through his employment here that he was served with process last time. ~~In this very same complaint~~

Below ~~are~~ is a non-exhaustive list of things Defendant has done that violate both the ADA and 42 U.S.C. 1983:

### Examples #1, 2 & 3

In either the early half of November or the latter half of October 2011, I called the police to report a charge of disorderly conduct against

my father, who was playing his music too loud. Although we are blood related, our living arrangement was officially that of roommates, which I believed qualified me for protection against disorderly conduct.

However, when the police officer got there, he would not let me get a word in edge-wise. When I asked him if I could please finish my sentence, he exploded and said "Ok, first of all, no you can't, alright?! Don't talk back! I came here to help you, alright?! You called me!"

Aside from that being completely out of the blue, it is also a violation of Title II of the Americans with Disabilities Act. ~~I will dem~~ ~~---- --- -- ---- --------~~ For one, it is retaliation, because he did this because I previously sued his fellow government employee, Jason Jones, for discrimination. Second, if he knows about that previous case, then he knows about my Asperger Syndrome, which means he failed to accommodate it. ~~----~~

It is also a Section 1983 claim. ~~--~~ His actions were a result of the content of my speech, rather that the time place and manner. That is why these are three examples: Retaliation, failure to accomodate, and censorship.

Examples #4 ~~----~~ 5(

On Thanksgiving Night, November 24, 2011, my

father punched me in the eye, and ~~pointed m~~ then proceeded to cut himself with a knife, so ~~he~~ that, when the police came, he could accuse me of attacking him with a knife, so he would not go to jail.

Jason Bearthky - the ~~offer who~~ Sheriff's Deputy who responded to my previous disorderly conduct complaint- joined Deputy David Upton in responding to this ~~e~~ call, even though Upton was the one originally dispatched, and he was perfectly capable of handling the situation on his own.

After spending a measely five minutes ~~in~~ investigating the claim, Dep. Bearthky - who is good friends with my father - just took my father's word for it and ~~een~~ arrested me instead of him. He never bothered to consider the small amount of blood, the lack of severity of the cuts (showing that the cuts had to be slow and careful, rather than the result of a malicious knife attack), or a potential affirmative defense that I brought to his attention.

Had I not sued one of Defendant's employees for discrimination, Bearthky probably would have 1) performed a more thorough investigation and 2) also arrested my father. ~~The, the~~ ~~two accounts for two counts of let~~ That is why this counts as Examples #4-5. Examples #6 through ~~Ah~~ ~~from~~ #51 come from the

page 3

fact that his arrest caused me to spend at least 45 days in jail. Each day that I would not have spent incarcerated* is an independant act of retaliation. That is, every day I would not have spent in jail but for Bearthky's discriminatory arrest.

## Examples #52

The morning after I was arrested, on November 25, ~~xxxx~~ 20 11, Jason Jones appeared for work and celebrated the fact that I was arrested. He introduced me ~~xxxx~~ to the rest of the jail staff as "the guy who sued me for $306,000,000!" This is retaliatory harrassment.

## Examples #53 +54

A few minutes after Jason Jones established our litigation history, he told another officer "I never saw him draw a picture; I don't know if he's artistic!" I don't know what the other officer said that he was responding to, but it is largely irrelevant. Jones' actions here constitute two violations of the ADA: 1) retaliatory harrassment and 2) original discriminatory harrassment, because he was simply making fun of my disability.

## Example #55

After making fun of my disability, Jason Jones proceeded to look into my cell, with the look on his face of a mischevious child peeking into the In School Suspension room to harass the kids

page 4

who actually got caught misbehaving. He then proceeded to ask me how my cases against Wal-Mart and University of Arkansas (case nos. 10-3086 and 10-5125, respectively) are going." His tone of voice, combined with the look on his face, and his previous actions, can tell even a person with Aspergers that he was not genuinely concerned with the status of my cases. Instead, he was more interested in making fun of me about them.

Examples #56 & 57

Jason Jones then proceeded to play some video I had uploaded to www.youtube.com at maximum volume on a computer stationed right outside my cell, so I could hear every word of these video. In one video, where I expressed my distaste for the popular PC video game World of Warcraft Jason Jones asked me through my cell door "Hey David, is the reason you hate WOW is cuz it's a multiplayer game and ya ain't got no friends?"

He then proceeded to my video where I expressed distaste for the common law doctrine of at-will employment. When I got to the part where my sister was fired from Taco Bell, simply because she asked to be given additional hours to work, Jason Jones yelled "Your sister got fired from Taco Bell cuz she's a slut!"

### Examples #58 & 59

When the 309's (they are, essentially, the "housekeepers" of the jail, responsible for the cooking, ~~-~~ laundry, etc.) brought my lunch - a balogne sandwich - Jason Jones asked the 309's to give me a different tray, saying that he had previously rubbed his scrotum on the lunch tray he wanted for me, causing me to not eat and thus go hungry. This is both retaliatory harrass~~ment~~ and sexual harrassment.

### Examples #60 & 61

Up until now, Jason Jones' actions all took place on November 25, 2011. On Saturday, Nov. 26, 2011, he appeared for work and showed a hand-written sign through my cell door window. It said "YOU'RE GOING TO GET ASS-RAPED!" Like the balogna incident, this is both retaliatory ~~and~~ ~~intimidation~~ and sexual harrassment.

### Example #62

After having my 8.7, Jason Jones escorted me to the place in the jail where the other inmates were (dubbed "population"), I had to collect my things. I had trouble carrying them all, so I dropped a few. I asked Jones to hang on while I picked them up. He told me that he can't wait until I told someone else to hold on, a slightly more subtle but equally 🖋 steadfast way of saying "I hate your guts for suing me,

so I'll make your life a living hell in here,
and I don't give a damn about retaliation
laws."

## Example #63

Jones put me in a cell with two other
inmates (even though ~~there~~ there were plenty of
cells in the jail that were completely empty, but
that's beside the point) who he knew would
brutalize and sexually assault me. Indeed, only
one night was all I spent in that place
before I was moved back to my original
cell and put in protective custody. Jones chose
the worst cell for me because I sued him
for discrimination.

## Example #64

When I was moved back to my solo cell,
Jones proceeded to harrass me over the inter-
com. For example, he shouted "HABEAS CORPUS"
into the intercom, making fun of the fact that
I had previously asked for some paper so I
could file a petition for writ of habeas cor-
pus, but they would not allow me to do
that.

## Example #65

As Jason Jones was belittling me, I cracked
under the ~~pressure~~ harrassment and spilt my
rice on the floor and flipped off the camera
in my cell. Another officer threatened to mace

me in the face if I did not pick it up. On this one, even I have to admit that I am partly at fault. I did spill the rice, but Jason Jones drove me to that point.

### Example #66

When I filed a grievance form against Jones, Jason Day - the Jail Administrator - stormed into my cell, screaming bloody murder, saying I need to "stop with the bullshit" and saying such things as "ain't nobody pickin' on you! Ain't nobody violating your rights!" He would not let me get a word in edge wise. He then moved me to a new cell that was also in "population," but kept me separate from the inmates who attempted to brutalize me, and returned my grievance form to me. In the space provided for him to provide a written response, he said I was unable to give any specific incidents of what Jones did. Oh, I was able to give some specific incidents; look at this complaint! He just wouldn't let me!

This example is therefore second generation retaliation.

### Examples #67&68

Things were fine for a little while, while Jason Jones was on vacation. However, on Monday, December 12, 2011, Jason Jones would not let me out of my cell to eat breakfast. When I filed

page 8

a grievance against him, he came into the cell, screaming at the top his lungs, calling me a peice of shit, saying that I've been treated like a "god-damned basket case," daring me to ~~tell what I put in~~ say to his face what I put in ~~the~~ my grievances (his exact words were "You say I'm discriminating against you?! You wanna put that in writing?! Bitch, why don't you say that to my face?!", and to top it all off... ~~you're not even going to believe this~~

He threatened to cripple me if I tried to sue him! I am not kidding! Again, his exact words were "You wanna sue me, boy?! You won't be able to fucking walk outta this jail son!"

He then placed me on lockdown for the day as a punishment. The lockdown is the second of these two examples.

### Examples #69 + 70

Jason Day came by later that day and discussed the grievance with me. Again, he wouldn't let me ~~even~~ state my whole case, but as if that weren't enough, when I tried to tell him about Jones' behavior that morning, he said he would charge ME with terroristic threatening! He said he knows about my history with Jones, and he's ready for me, eliminating any possibility that he might be acting in good

page 9

faith, assuming some shred of possibility still remained.

The two counts of discrimination here are:-
1) the failure to prosecute Jones, ~~because Ray hates~~ ~~me for the lawsuit I filed~~ and 2) attempting to charge me, instead. *None of these would have happened had I not sued Jones for discrimination.*

Examples #70 ~~##~~

All through that week, Jason Jones simply stood by and ignored ~~the~~ the other inmates harrassing me. One of their favorite ways to harrass me was to spray me with windex. When I complained about it, Jason Jones simply told me "They're just cleaning!" Any idiot with ~~####~~ half a brain ~~###~~ could look at that camera footage and tell you that's B.S.

Examples #71 ~~#####~~ 77

On Thursday, December 15, 2011, the harrassment spoken of in Example #70 came to a head. Jones told the other inmates to "give him hell for me!" By "him," he meant me. The other inmates began to "clean" like mad men, spraying me with more windex ~~###~~ than they had sprayed up to that point, mopped around my feet, got my belongings totally soaked in mop water, and all with devilish ~~####~~ smiles on their faces.

When I retreated into an empty cell, it was not my own, but it was still unoccupied, so I thought it would be okay. However, another

officer (the same officer who threatened to mace me in example #65) said that if I do that again, that I would be locked down ~~permanent~~ permenantly, in direct violation of my 8th Amendment rights.

As the afternoon wore on, Jason Jones made the "suggestion" that I "give" them my dinner tray. This came in the form of more belittling. As I was sitting in my cell, trying to calm down, an inmate was staring at me with that same childish grin that Jones gave me on Nov. 25. Jones saw this on the cameras and told me "What do ya think he wants? He wants your dinner tray! Tell him he can't have it! Tell him 'No! You can't have my dinner tray!'" Sure enough, this inmate snatched my tray right from under my nose, and when I complained, Jones merely said "They told me you gave it to 'em!" I could hear the laughter in his voice over the intercom.

When I was trying to at least drink my juice, even if I couldn't eat dinner, an inmate walked up and cocked his fist back at me, causing me to flinch and spill some juice. Rather than charge that inmate with assault, Jones made me come outside my cell (to which I had since retired) and clean up the juice spill that was not even my fault!

page 11

When I finished cleaning the juice, I tried to go back to my cell, but the inmates threw a mop bucket in front of the stairs to block me from climbing them. I moved the mop bucket out of the way, and they threw it in my face, breaking my glasses and cutting my face in two places. When I went to court on Dec. 16, my public defender took a picture of my face, to prove it, but back to Dec. 15.

Jones did not punish the inmates for what they (he?) did. Instead, he took that opportunity to try to convince me that I was in the wrong when I sued him for discrimination.

So, let's count up all the incidents of discrimination: 1) ~~allowing the inmates to harass me all week long~~ telling the inmates to give me hell, 2) telling the inmates to steal my dinner tray, 3) not punishing them for stealing it, 4) not charging the inmate with assault who cocked his fist back at me, 5) making me clean up the juice spill I didn't even ~~cause~~ cause, 6) allowing the problem to escelate to the point where I got a mop bucket thrown in my face, and 7) not doing a god damned thing when they threw it in my face.
Examples #80-81

After I was moved to another part of the jail, things were once again quiet, for a time. However, on December 30, ~~2012~~ 2011, Jason

page 12

Jones once again started harassing me over the intercom! He made fun of the fact that I can't sue people while in here. I told him that I can still sue; I just have to do it through the mail. He said "Try it, bitch! Just remember, I can still get to you!"

I filed a grievance against Jones for that. To this day, I have not received a response to it.

Two counts of discrimination: 1) another terroris is threat, and 2) the jail not doing anything about it.

### Example #83

I once took for myself the lunch tray of an inmate who did not get out bed to claim it. I got scolded for that. OK, fair enough. But on January 3, 2012, when I complained that an inmate did the same thing to my breakfast tray, the officer by the name of Neckels simply dismissed my grievance. ~~This unequal~~ He didn't even file the grievance! He just handed it back to me! This unequal treatment likely would not have occured, had I not sued their comrad for discrimation and threatened the same for the county.

### Example #84

When I went to court in early January, Jason Jones put my shackels on so tight that they started

to cut the circulation off from my wrists. By the time I got back to jail, my arms were crimson. I had never had them so tight, but then again, I had never been shackled by and officer who I had previously sued for discrimination.

## Examples #85 & 86

As I was waiting to get the shackels taken off, other shackeled inmates were talking about wrestling being fake. I made the comment that wrestling is not supposed to be real. Jones said "Stebbins, shut the fuck up." This is both discriminatory retaliation and also a violation of my free speech rights, hence why this is both #85 and #86.

## Examples #87 & 88

Jason Jones performed a search of my cell, despite having no individual suspicion that I had contraband, and stole some proof that I had that proved that he held a grudge against me for suing him. This is retaliation (he did it in order to steal the proof), and a violation of my 4th Amendment rights, since it was done without individual suspicion.

## Examples #89 - 408

Yes, you read right: Eighty-nine through four hundred and eight!

On January 15, 2011, I managed to find a hotel I could live at called Hotel Seville. I used

page 14

the jail's phone to call them to get a room. However, in an attempt to keep Mr. Lawsuit in jail, they would not let me bond out. At first, they said it was because I had not secured medical treatment, which was a second condition of my bond. ~~The~~ (the first condition was having a place to live, which I then had). However, jail administrator Jason Day, after coming back from the weekend, knew right off the bat that I was supposed to secure medical treatment after I bond, so I called the Hotel Seville again. By this time, however, I was ~~Ping~~ required to pay three months in advance, due to a new policy they implemented just the day before. I had to ~~pay~~ wait until Feb. 1 to ~~pay~~ be able to pay that! (that is when I get my SSI check) The Hotel Seville set me up for Feb. 1, but by then, they had learned that I was in jail for a violent offense, and canceled the hotel room reservation.

How does this constitute a whopping 320 incidents? Well, because it caused me further incarceration. The arrest spoken of in examples #4-51 caused me 45 days incarceration, but ~~be~~ because of Defendant's shenanigans on Jan 15, I must now wait the remainder of the year from November 24, 2011 to Nov. ~~28~~ 24, 2012, in

page 15

jail. I had my bond ready to go, but they made up an excuse to keep me in here, so that I would have trouble suing people, even if these suits are protected by retaliation laws. Now, I have to wait the whole year (the maximum time the State has to give me a speedy trial under the Sixth Amendment), before I can be free again. Had it not been for this, the arrest itself would have been "no harm no foul."

Example #409

When I was first booked into the jail, I informed the staff about my Aspergers. They accepted that I have it. This entitles me to reasonable accommodations. The only effective way ~~that~~ to accommodate Aspergers' tactlessness is ~~the~~ the same way you would accomodate a dislexic's inability to effectively read pamplets: By being patient and understanding, and by not punishing him for breaking a rule if there is a reasonable ~~possibility~~ possibility that the rule would not have been broken, but for the disability. Aspergers is not an excuse to ~~blatantly~~ blatantly dispicable behavior (e.g. "You fucking cunt"), but I am entitled to a good bit of leeway.

That being said, in early January (I forget the exact date), I wrote a letter to Jason

page 16

Day, expressing my frustration with the way he will not let me get a word in edge wise. Apparently, my Asperger's kicked in, and I must have said something, because Day called me into his office and said "Sit your ass down! I'm gonna tell you what a god damned rant is! Let me tell you something: You don't HAVE a view in here! You're gonna do what we tell you to do when we tell you to do it! Now get his ass outta here!"

Jason Day failed to accommodate my Asperger's. Therefore, it is another count of discrimination.

Example #10

While in jail in early February, I submitted a written request to Boone County's Criminal Investigations Division, or CID for short. I wanted them to override Jason Bearthky's decision and to dual charge my father. My grounds for requesting the dual charge were simple: If I didn't commit domestic battery, that necissarily means that he did, because his "self defense" excuse for punching me in the eye goes flying out the window. Simple enough.

However, the CID never even attempted to look into this matter for me. To be honest, I think they know about the discrimination, and they're in on it, as is my

father. Yes, my own flesh and blood is in on the discrimination! A bold statement, but I intend to prove it!

~~As of right now I have no other~~

## Examples #411 - ~~670~~

I am forced to shower every day. That in and of itself is not a bad thing. However, the jail rules and regulations flatly state that I would be provided with a clean uniform when I shower. Instead, the jail only provides me with two clean uniforms per week. The other five days, I must wear the same uniform. The jail would not likely have ignored the parole evidence rule like that had I not sued one of their employees for discrimination.

The 260 counts of discrimination in this set come from the five days pe week and 52 weeks I will be here (see examples #89-408) when I was wrongfully deprived of a change of clothes pursuant to the written rules.

## Examples #671-691

For approximately three weeks, I was given only three hours per day in the ~~the~~ "Day Room," (the room outside the cells where people can watch TV, read the newspaper, make phone calls, etc.). I would likely have been given equal time in the Day Room had I not sued the County's

page 18

employee for discrimination.

Examples #692-1,056

These incidents are not really discrimination but rather, more Section 1983 ~~add~~ claims. I was forced to clean my cell every day. ~~You~~ You might ask "What's so wrong with that?" Well, you have to realize that I have not been convicted yet. Involuntary servitude is only permissible under the "13th Amendment "as punishment for a crime where the criminal has been duly convicted!" Until I am convicted, Defendant has no business forcing me to lift a finger against my will. ~~They cannot make it~~ Defendant should be careful of the case law it chooses to cite in defense of this argument. If the case involves a prison inmate instead of a jail inmate, it is distinguishable on precisely that ground.

~~Injuries suffered~~

~~Below is a non-exhaustive list of~~

Relief Requested

I humbly request the following relief:

1. Injunctive relief to cease and desist the violative actions spoken of in this complaint. This includes an injunction to either dismiss the discriminatory criminal charges against me, or file criminal charges against my father, like I

asked for in Example #40.

2. One thousand dollars per incident of ~~the~~ violation of my rights (for a total of $1,056,000) for a combination of emotional distress, mental anguish, and loss of enjoyment of life.

3. Ten times the above-requested damages, or $10,560,000, in punitive damages, since every action spoken of in this complaint was willful, ~~and~~ malicious, and done in wreckless disregard to my federally protected rights. This makes for a grand total of $11,616,000.

Conclusion

Wherefore, premises considered, I respectfully pray that the above-requested relief be granted.

David Stebbins

David Stebbins

5800 Law Dr.

Harrison, AR 7260l

David Stebbins
5800 Law Dr
Harrison AR 72601

72701$5353

U.S. District Court
35 E. Mountain St.
Room 510
Harrison AR
Fayetteville, AR 72701



UNITED STATES POSTAGE
PITNEY BOWES
02 1P      $ 000.650
0001711491   FEB 15 2012
MAILED FROM ZIP CODE 72601

RECEIVED
WD/AR

FEB 16 2012

U.S. CLERK'S OFFICE