U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
OCT 03 2012
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS     PLAINTIFF

VS.     CASE NO. 12-3022

BOONE COUNTY, AR     DEFENDANTS

## BRIEF IN SUPPORT OF FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following brief in support of my first motion for partial summary judgment.

### Background

On November 25, 2011, I was arrested under baseless suspicion of domestic battery. My jail bond was set at $10,000, but in order to be allowed to bond, I had to have a place to live, and I had to pledge to get "some kind of treatment."

On January 15, 2012, I had secured a hotel reservation at a place called the "Hotel Seville." However, the jail staff refused to allow me to bond because I had not received any court-ordered treatment, even though I was only required to *pledge* to get this treatment. Two days later, after Jason Day – the jail administrator – had returned from his long weekend[1], he instantly realized that this was a mistake, that I could postpone the treatment until *after* bonding, and immediately intervened, directly overseeing my new attempts to renew my hotel reservation.

It worked, but only slightly. In the two days since I had last attempted it, a new policy was introduced at the Hotel: Those who rent by the month must pay three months in advance. I could not afford that, *plus* the bonding fee, until I received my SSI check in February. Therefore, my hotel reservation – and, subsequently, my bond date – was set for February 1, 2012.

However, in late January, the Hotel Seville learned of the nature of charges and canceled

---

[1] January 15 was a Sunday, and January 16 was Martin Luther King Jr. Day.

the reservation. I was back to square one regarding finding living arrangements.

In mid February, I had attempted to resolve this dispute without Court action. Jason Day refused to settle with me. Therefore, I have exhausted my administrative remedies pursuant to the requirements of the Prison Litigation Reform Act.

On the dates of March 1-3, I had once again found a potential living arrangement in the newspaper, and asked to use the jail's phone to try and secure those arrangements. Although the jail staff said I could use it, they never escorted me there. It was only on Monday when, again, Jason Day intervened, that I managed to call them. However, by that time, the two rooms that the ad in the newspaper had advertised had already been rented out. Again, my bonding attempts were foiled.

The jail attempted to justify it by claiming that they were "busy." However, they have failed to actually *document* their business, instead opting to object to the corresponding discovery request. Since they are claiming that this excuses them from their duty to allow me to seek the conditions of my bond, they hold the burden of proof, since they are using it as an affirmative defense.

Meanwhile, while all of this was going on at the jail, my litigation was wasting away at the Boone County Circuit Court. I was supposed to be suing Harp & Associates for $6,094,000 for abuse of process, but due to a botched attempt by my mother to monitor the case for me, I had thought that the service of process for that case had never even been perfected on the Defendant. Therefore, whereas in federal court, I filed notices of change of address, I had made the decision – based on her mistaken advice – that there would be no need for me to update my address in that case, because the case hadn't even formally gotten underway, and that I could engage in service by publication upon getting out of jail.

It was only until I was released that I learned the truth: My mother was monitoring the *wrong case*! By then, it was too late; the case had already been dismissed, and the thirty-day window to appeal the dismissal had already passed.

Had I bonded out in mid-January like I should have, I would have learned the truth in time to appeal the dismissal. Therefore, Defendant's failure to allow me to bond – malicious or not – cost me that case. Whether by accident or design, they literally cost me millions of dollars.

**Argument and Discussion**

Regarding actual fault, the exhibits speak for themselves. It was their failure on January 15, 2012 to allow me to bond when I had met all the prerequisite conditions that (1) caused me an additional 57 days of further incarceration, and (2) caused me to permanently loose the abuse of process case.

Regarding the second injury, I did my best to mitigate those damages[2], but my incarceration meant that I had to rely on the assistance of someone who doesn't know jack about the legal system and thus didn't have a clue what she was doing.

My mother's failure to monitor the correct case does not excuse their liability in this case, because it happened before the events of January 15. My mother's actions are not an intervening cause absolving them of liability; their actions are an intervening cause absolving *her* of liability! That is why it is called an "intervening" cause; to "intervene" means to get in-between two things. An intervening cause must be chronologically in-between one cause and an injury.

For example, if I am in a car accident, and a bolt of lightning damages my car far beyond what the accident itself had damaged it, I could not hold the other person liable for the lightning damage, even if he were at fault for the accident, simply because I wouldn't have been in that

---

2 ...even though I am not required to. See Audio Odyssey v. Brenton First Nat. Bank, 286 F. 3d 498, 501 (8th Cir. 2002) ("A failure to mitigate damages is not an affirmative defense to a constitutional tort").

very *spot* where the lightning struck, but-for his accident. That is an example of an "intervening cause," but keep in mind, it is "intervening" because the lightning strike was chronologically after the accident. Here, it was Defendant's actions that were chronologically after those of my mother, not the other way around.

Therefore, causal connection is clearly established. However, I wish to go beyond that; I wish also for the Defendants to be liable to me for punitive damages, because they did it maliciously.

How can I prove this, you ask? Well, for starters, there's the fact the inmate log produced as part of this discovery conspicuously lacks documentation of all three bond-out attempts. The one on January 15, the one on January 17, and the one on March 3. Although many documents authored by the jail staff – namely Exhibit C – admit that these events existed (Exhibit C only denies liability for them, not their existence), the events themselves are not documented.

Why is that? This is not the sort of thing that you just would not document, especially if other things related to it *would* be documented. The only thing that makes sense is that it *was* documented, but they pulled it out for this discovery. The only sensible motive for doing so is that they are afraid of what it would prove.

However, any potential benefit of the doubt you can give them is quickly ruled out when you take into account the events of March 1-3. They refused to allow me to attempt to secure living arrangements, claiming that they were "busy," even though they can't prove that. This eliminates any possibility of good faith. Heck, it even eliminates the possibility of callous indifference to my rights, because callous indifference does not explain why they would just *make something up* as an excuse to not allow me to pursue my bonding rights! Attributing it to malice is the only way it makes sense.

Therefore, they didn't just cause me 57 additional days of incarceration and the loss of a $6,094,000. They *willfully and maliciously* caused me 57 additional days of incarceration and the loss of $6,094,000.

### Relief Requested

First and foremost, Defendants should be forced to compensate me for the $6,094,000 they caused me to loose. However, I should also be compensated for the extra time I had to spend in jail.

In the case of *Maxwell v. Mason*, 668 F.2d 361 (8th Cir. 1981), the 8th Circuit Court of Appeals held that compensatory damages of $100 per day was reasonable, without the plaintiff even having to prove that he was even "injured" *per se*. However, there are two flaws in that case. For one, it was passed in 1981, and we should adjust for inflation, accordingly. Secondly, that was only $100 per day for the loss of just one single right; a finding of unlawfulness in the incarceration in its entirety easily constitutes several simultaneous losses of rights and/or injuries.

As for inflation, this is easy to calculate. The website of the United States Bureau of Labor Statistics has an inflation calculator, which can be accessed at the following web address: http://www.bls.gov/data/inflation_calculator.htm/

Using that calculator, one finds that $100 was worth in 1981 what approximately $252.45 is worth today. Let's knock it down to $250 even, to make the math easier.

As for the loss of multiple, simultaneous rights, I can think of at least four rights being lost: The right to freedom of movement, for one, but also the right to free dress, the right against unreasonable searches, loss of time, and the deprivation of society. Therefore, I believe that compensatory damages of $1,000 for each day of prolonged incarceration is reasonable. Since

the actions that are the crux of this motion caused me an additional 57 days' incarceration, I request $57,000 in compensatory damages.

Combine that with the above-mentioned $6,094,000, and we have total compensatory damages of $6,151,000. But it doesn't stop there.

As I pointed out, Defendants' actions were willful and malicious. Therefore, they should be required to pay punitive damages. I ask that the Court impose upon then $61,510,000 in punitive damages (that's ten times the compensatory damages).

This makes for a grand total (at least for this motion) of $67,661,000.

These damages should be in addition to, not in place of, any other damage I may prove to be entitled to.

## Conclusion

Wherefore, premises considered, I respectfully request that the first motion for partial summary judgment be granted.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com