IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID STEBBINS                                                                                    PLAINTIFF

      v.                             Civil No. 12-3022

BOONE COUNTY, ARKANSAS;
and SHERIFF DANNY HICKMAN                                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

    Plaintiff, a former inmate of the Boone County Detention Center (BCDC), brings this case asserting claims under the Americans with Disabilities Act (ADA) and 42 U.S.C. § 1983. He maintains Defendants discriminated against him in various ways because of his disability, Asperger Syndrome, and failed to make reasonable accommodations for him. Additionally, he asserts his constitutional rights were violated in a variety of ways.

    Pending before me for issuance of this report and recommendation are three partial motions for summary judgment filed by the Plaintiff. Defendants have filed a combined response to the motions and motions for judgment on the pleadings. They contend they are entitled to judgment in their favor on the issues raised in these three partial summary judgment motions. Plaintiff has responded (or replied) to Defendants' request for judgment in their favor. The motions are therefore ready for decision.

### 1. Background

    On November 24, 2011, Plaintiff was in an altercation with his Father. The police arrived and Plaintiff was arrested and charged with domestic battery and disorderly conduct. As a result of his arrest, Plaintiff was placed in the BCDC.

Plaintiff maintains his rights were violated in numerous ways including the following: during the arrest he was not allowed to get a word in edge wise; he was singled out for arrest while his Father was treated as the victim; he was retaliated against because he had previously sued a Boone County deputy; he was retaliated against and punished because he submitted grievances; he was threatened because he planned to file a lawsuit; he was threatened, harassed, belittled, called names and made fun of because of his disability; on one occasion he did not eat his meal because of what someone was alleged to have done with his food; on one occasion he was not allowed out of his cell to eat his breakfast; being placed in a cell with other inmates despite the fact that there were empty cells; placing him in the worst cells; when he submitted a grievance he was not allowed to explain and he was yelled at, called names, and threatened with bodily injury; other inmates were allowed to harass him, encouraged to do so, and were told by an officer to give the Plaintiff h---; when he went to court, his shackles were so tight they cut off circulation to his wrists; his cell was searched without individual suspicion; he was not allowed to bond out even though he had found a place to live; Defendants failed to accommodate him by being patient and understanding, giving him leeway, and not punishing him for breaking a rule if there was a reasonable possibility that the rule would not have been broken but for his disability; although he is forced to shower everyday, he was only provided clean clothing twice a week; for approximately three weeks he was given only three hours per day in the day room while other inmates were allowed more time in the day room; and he was forced into involuntary servitude by the requirement that he clean his cell every day.

AO72A
(Rev. 8/82)

### **2. Applicable Standards**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

On a motion for judgment on the pleadings, a court applies the same standard as in a 12(b)(6) motion for failure to state a claim. *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 996 (D. Minn. 2004)(*citing St. Paul Ramsey County Medical Ctr. v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988)). Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(*quoting Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1940 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (*quoting Iqbal*, 129 S. Ct. at 1949). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

**3.  First Motion for Partial Summary Judgment (Docs. 38-40) and Motion for Judgment on the Pleadings (Docs. 60-62)**

In this motion, Plaintiff maintains he is entitled to judgment in his favor on his claim that Defendants refused to allow him to post bail. Plaintiff refers the Court to a document entitled inmate release report. Bail was set in the amount of $10,000 and the following conditions of bond were set: "[c]ondition of bond (before he bonds) a place to live-receive some kind of treatment--Make appointments for evaluation-Jail to make arrangements where he is not subject to violence reap[p]ear 2/3/2012." *Plaintiff's Exhibit A*, Doc. 38.

On January 15, 2012, Plaintiff states he secured a hotel reservation at the Hotel Seville. However, he asserts that he was not allowed to bond out because the officers erroneously believed he had to be evaluated first.

On January 17, 2012, jail administrator Jason Day, clarified that the only condition Plaintiff had to fulfill before bonding out was to have a place to live. Once this issue was cleared up, Plaintiff called the Hotel Seville to again make living arrangements. He found out that a new policy had been implemented requiring month-by-month renters to pay three months in advance. Plaintiff made a reservation for February 1, 2012. Prior to the time for him to actually bond out, Plaintiff states the Hotel Seville learned the nature of his charges and cancelled the reservation. On March 1 to March 3, Plaintiff states he learned of potential living arrangements and asked to use the phone to secure the arrangements. While he was given approval to use the phone, he states he was never escorted to the phone allegedly because the jailers were busy. When he was allowed to use the phone several days later, the rooms had been rented. As a result of Defendants' actions, Plaintiff states he remained incarcerated an extra fifty-seven days. During the intervening period of time, Plaintiff states the Boone County Circuit Court dismissed an abuse of process lawsuit he had filed against Harps & Associates.

Defendants have provided the Court with a copy of the Boone County Criminal Docket Sheet. It indicates bond was set at $10,000 with the following conditions: "1) place to live--not his parents[,] 2) under care of Human Resources of Ark or other treatment facility, 3) make appointment for forensic evaluation." *Defendants' Exhibit* 1 (Doc. 62).

Defendants first maintain that Plaintiff's allegations do not rise to the level of a constitutional violation. Second, they argue that Plaintiff has no, and cannot offer any, proof of an unconstitutional Boone County policy or practice. Third, they argue Plaintiff has no proof of any compensatory damages. Defendants assert that Plaintiff did not at any time provide acceptable proof to the BCDC that he had met the conditions of release established by Judge

Case 3:12-cv-03022-TLB   Document 84   Filed 08/01/13   Page 6 of 11 PageID #: 362

Webb. Finally, they maintain there is no basis for punitive damages. Defendants maintain they are entitled to judgment in their favor on this claim.

At most, the record establishes that a detention officer wrongly interpreted the court order. Negligence does not violate the constitution. *See e.g., Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005)(mere negligence is insufficient to establish culpability under § 1983). The summary judgment records contains no evidence Boone County had a policy, procedure, or practice of refusing to allow inmates to post bond. *See e.g., Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013)(a governmental entity can only be held liable if it had a "policy or custom that caused the plaintiff to be deprived of a federal right.").

Further, the mistaken interpretation was rectified two days later. The BCDC is not responsible for changes in policy made by the Hotel Seville with respect to month to month renters. It was Plaintiff's lack of funds that resulted in his remaining in the jail. Defendants are entitled to judgment on this claim.

**4. Second Motion for Partial Summary Judgment (Docs. 41-43) and Motion for Judgment on the Pleadings (Docs. 63-65)**

In this motion, Plaintiff asks for judgment in his favor on his free speech claim. In particular, he maintains the jail rule requiring inmates, including himself, to treat officers with respect and courtesy is clearly "against everything the right to free speech stands for. Banning the content of the speech, rather than the time, place, and manner of it, must pass strict scrutiny in order to be constitutional." He seeks compensatory and punitive damages in the total amount of $453,750 for both his incarcerations; the first being from November 25, 2011, to March 14, 2012; and the second from July 27, 2012, to September 17, 2012.

AO72A
(Rev. 8/82)

In response, Defendants first argue that the allegations do not rise to the level of an unconstitutional act by a Boone County employee. Second, they argue the Plaintiff has not, and cannot, offer any proof of an alleged unconstitutional Boone County policy or practice. Third, they argue that Plaintiff has no proof of any compensatory damages. Finally, Defendants argue they are absolutely immune from an award of punitive damages.

"[A] prisoner retains certain First Amendment rights notwithstanding his incarceration." *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009)(*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Instead, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.

Contrary to Plaintiff's assertion, strict scrutiny does not apply to the analysis of First Amendment claims in the detention center context. Instead, restrictions on this First Amendment right are valid "if [they are] reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987). Four factors are considered in making this determination. They are: (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prisoner officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimus cost to the valid penological interest. *Benzel v. Grammar*, 869 F.2d 1105, 1008 (8th Cir. 1989).

Plaintiff maintains the policy unlawfully restricts his freedom of expression in that he cannot use profanity, curse, swear, or engage in other offensive communications with jail personnel. "[S]ome narrowly limited classes of speech enjoy no First Amendment protection. These include the lewd and obscene, the profane, the libelous, and the insulting or fighting words." *Republican Party of Minnesota v. White*, 416 F.3d 738, 749 n.4 (8th Cir. 2005)(*citing Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)(internal quotation marks omitted)). Even if such communication is considered protected by the First Amendment, it materially disrupts the operation of a detention center and the detention center has a legitimate interest in promoting order and security in the jail. Securing, order, and rehabilitation are generally recognized as legitimate penological objectives. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974); *see also Ustrak v. Fairman*, 781 F.2d 573 (7th Cir. 1986).

In *Ustrak v. Fairman*, 781 F.2d 573 (7th Cir. 1986), a prisoner brought a First Amendment challenge to a regulation that forbids inmates being disrespectful to any employee of the institution and swearing, cursing, or using any other vulgar, abusive, insolent, threatening, or improper language towards other inmates or employees. The Court held the regulation to be bear on the "direct and elementary needs of prison administration." *Id.* at 580. It stated it could "imagine few things more inimical to prison discipline that allowing prisoners to abuse guards and each other." *Id.* It stated that "[p]eople who want to enjoy the full panoply of constitutional rights to express themselves had best refrain from committing crimes." *Id.*

The policy at issue in this case merely requires a prisoner to treat prison officials with respect and courtesy. The policy does not limit the topics that may be discussed. It does not restrict prisoners from submitting grievances, challenging conduct on the part of jail personnel,

-8-

or otherwise restrict the conveyance of any message. It does not preclude prisoners from attempting to change the viewpoint of others or restrict the discussion of topics that might be deemed offensive to some. *Hill v. Colorado*, 530 U.S. 703, 716 (2000). Defendants are entitled to judgment in their favor on this claim.

**5. Third Motion for Partial Summary Judgment (Docs. 44-46) and Motion for Judgment on the Pleadings (Docs. 66-68)**

In this motion, Plaintiff maintains that BCDC's requirement that inmates clean their own cells and take turns cleaning the day rooms violates his Thirteenth Amendment right not to be subjected to involuntary servitude. Plaintiff asserts that he was threatened with pepper spray if he did not perform the janitorial services.

Plaintiff also points out that he was a pretrial detainee and not a convicted prisoner. Until he is convicted, Plaintiff maintains Defendants "ha[d] no business forcing me to lift a *finger* against my will." (Doc. 46 at pg. 1; emphasis in original). As relief, Plaintiff asks that Defendants be ordered to pay him at least $453,750.

Defendants maintain the policy advances the jail's legitimate interests in health, safety, order, and security. Defendants argue that no constitutional claim has been stated. In their discussion, Defendants treat the claim as a conditions of confinement claim under the Fourteenth Amendment. In opposition, Plaintiff asserts that this claim is solely one under the 13th Amendment (Doc. 72).

Plaintiff maintains the case of *McGarry v. Pallito*, 687 F.3d 505 (2nd Cir. 2012) "perfectly encapsulates the issues embraced" in his third motion for summary judgment (Doc. 73 at pg. 1). Plaintiff's reliance on this case is misplaced. The Court stated that the law is

"clearly established that requiring hard labor of pretrial detainees . . . violates the Thirteenth Amendment." *Id.* at pg. 514. However, it noted that "correctional institutions may require inmates to perform personally related housekeeping chores such as, for example, cleaning the areas in or around their cells, without violating the Thirteenth Amendment." *Id.*

It has long been the law that "pending trial . . . a defendant may be imprisoned in a cell and must submit to the routine of the prison relating to his meals, his exercise and many other activities of daily life. All these matters, however, are incidental elements in the organized caretaking of the general company of prisoners." *Butler v. Crulish*, 229 F. Supp. 565, 566 (E.D. Pa. 1964). It has specifically been held that "requiring a pretrial detainee to help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the Thirteenth Amendment." *Bijeol v. Nelson*, 579 F.2d 423, 424 (7th Cir. 1978). "Daily general housekeeping responsibilities are not punitive in mature and for the health and safety must be routinely observed in any multiple unit living." *Id; see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)(Requiring a pretrial detainee to perform general housekeeping chores does not amount to punishments); *Jackson v. Siringas*, 2013 WL 3810301 (E.D. Mich. July 23, 2013). Defendants are entitled to judgment on this claim.

### 6. Conclusion

For the reasons stated, I recommend that Plaintiff's three motions for partial summary judgment (Docs. 38-40, 41-43, 44-46) be denied. I further recommend that Defendants be granted judgment as a matter of law (Docs. 60-62, 63-65, 66-68) on the following claims: (1) the alleged refusal to allow Plaintiff to bond out of jail; (2) violation of the Plaintiff's First

AO72A
(Rev. 8/82)

Amendment rights in connection with the rule requiring inmates to treat jail officers with courtesy and respect; and (3) Thirteenth Amendment involuntary servitude claim.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of August 2013.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)