U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

AUG 1 3 2013

CHRIS R. JOHNSON, CLERK

BY_____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF ARKANSAS**

**DAVID STEBBINS**                                                                          **PLAINTIFF**

**VS.**                                    **CASE NO. 12-3022**

**BOONE COUNTY, AR**                                                        **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION TO AMEND MAGISTRATE JUDGE'S ORDER

1.      Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in

Support of his simultaneously-filed Motion to Amend Magistrate Judge's Order.

### BACKGROUND

2.      On February 17, 2012, Plaintiff filed this action, suing the above-named Defendant for,

among other things, violation of Plaintiff's rights under the First, Thirteenth, and Fourteenth

Amendments to the U.S. Constitution, intentional infliction of emotional distress by jail guard

Jason Jones (coupled with the jail administrator's tacit authorization of Jason Jones' conduct),

and charging Plaintiff with a felony simply in an attempt to coerce Plaintiff to cease exercising

his First Amendment right to file lawsuits.

3.      Plaintiff filed, simultaneously with the Complaint, a petition for issuance of subpoenas.

This petition was later denied, stating that Plaintiff could re-file it after a scheduling order had

been issued.

4.      Once process had been served on the Defendant, Plaintiff submitted a variety of

interrogatories and requests for production.  Only one of them was fully complied with.

5.      After making reasonable attempts to resolve the discovery disputes without court action,

the Defendants only provided slightly improved responses to the discovery requests.

6.      Plaintiff subsequently moved to compel discovery, demanding that the Defendants fulfill

the remainder of the discovery responses.

7. The Magistrate Judge issed an order on July 30, 2013, (Doc. 82) denying the motion on all counts, simply claiming that the Defendant's responses were "sufficient," even though they were not.

8. Plaintiff also filed two motions for sanctions against the Defendant, who had made frivolous discovery objections. These motions were also denied in the same order (Doc. 82).

9. Plaintiff, thinking that a scheduling order was not going to be issued, re-filed his Petition for Issuance of Subpoenas, but in the same order (Doc. 82), the magistrate judge denied it again, purshing the date for Plaintiff to re-file back even further for no good reason.

## ARGUMENT I: THE MOTION TO COMPEL DISCOVERY

10. Due to the complexity of the arguments surrounding the relief requested in Paragraph 2(b) of the Motion that this Brief supports, Plaintiff will separate this brief into two arguments, so that no one argument seems excessively long-winded.

### Interrogatories Nos. 1 and 7.

11. These two interrogatories are being grouped into one argument, since Plaintiff's objections to Defendant's responses to both of them are the same.

12. The Magistrate Judge's reasoning for holding that the Defendant's responses are sufficient is because the officers in question no longer work for the County. This is ridiculous; just because they no longer work for the county does not mean that they cannot be confronted by the county and made to answer these questions. The county – as all employers are wont to do – probably keeps a record of former employees' addresses and phone numbers for several years after termination of employment.

13. Evidence of this theory is right here on the record of this case: Former Co-Defendant Jason Jones was served with process at the same address as the Jail. This proves that he was

called back to the jail to receive process, thus proving that the Jail had the means to do so.

14.    Therefore, there is STILL no reason why the Defendant cannot simply ask the former employees these questions.

## Interrogatory No. 2

15.    The Defendant claims that they did not discipline Jason Jones because... Plaintiff was supposedly unable to give specific instances of his conduct. The Magistrate Judge called this response sufficient.

16.    This WOULD be sufficient, also, if they were prepared to lock themselves into this answer. In other words, if Plaintiff can prove that he did, indeed, give specific details as to what Jason Jones did, the Defendant would be barred from providing explanations as to why they did not investigate the instances alleged, and/or discipline Jones for them. Subsequently, municipal liability for Jones' actions (where the superior officers such as Jason Day were made aware of Jones' conduct and chose to ignore it) would be established, and the only thing remaining to be established was that Jones actually did them in the first instance.

17.    If the Defendant is willing to accept the stipulations stated in the above paragraph, Plaintiff will withdraw his motion to compel a response to Interrogatory No. 2. Otherwise, however, Plaintiff asks the Court to order the Defendant to look through their records, find every single solitary time that Plaintiff has attempted to report Jones' unlawful conduct, and confirm that no specific examples were given. This is the last chance Plaintiff will give for the Defendant to provide an explanation.

## Interrogatories Nos. 3 & 4

18.    As stated in the simultaneously-filed Objection to Magistrate Judge's Report & Recommendation, the Defendant must actually PROVE that their policies – the constitutionality

of which are being challenged in this case – actually serve the interests which they purport to serve. Plaintiff went into a great amount of detail as to what, precisely, they must prove, why they must prove it, and what does NOT count as evidence thereof. The contents thereof are hereby incorporated by reference.

19.     Because the Defendant's responses to Interrogatories Nos. 3 and 4 do not even ATTEMPT to fuflill this purpose, their responses are woefully insufficient. This is unacceptable, especially when you consider the fact that the Defendant holds the burden of proof in strict scrutiny cases (again, as established in the Objection to R&R).

20.     Therefore, Plaintiff asks the Court to compel the Defendant to provide evidence that every single prong of strict scrutiny is established for both of these policies.

### Interrogatory No. 5

21.     Defendant's discovery response is still insufficient. They say that they moved Plaintiff for his "safety," but they failed to answer the second of the question: Why was moving Plaintiff preferable over punishing the inmates to made protective custody a necessity?

22.     The reason Plaintiff cares about this so much is because... what if getting Plaintiff removed was exactly what the other inmates were trying to do all along? In most of society, if you don't like a person, YOU are the one who should have to not affiliate with him, and to remove YOURSELF from the vicinity if you can't avoid him. In the Defendant's jail, however, it seems as if you can simply harass, sexually harass, or even *threaten* an inmate you don't like, and when they complain about your crimes committed against them, THEY are the ones who get moved. In essence, the inmates are being rewarded for their crimes, when they SHOULD get the exact opposite consequence.

23.     The reason that this is relevant to the instant proceeding is because... Defendant goes on

an on about how their rules and policies "assist in maintaining order in the facility," yet they completely ignore instances of disorder that they in fact seem to reward, which really brings into question whether or not "order" is their primary goal with rules and policies such as requiring officers to be treated with respect and courtesy.

### Interrogatory No. 6

24.     Defendant states that they provided reasonable accommodations for Plaintiff's Asperger Syndrome by moving Plaintiff for his safety.

25.     First of all, Plaintiff incorporates the arguments contained in Paragraphs #21 – 23.

26.     Secondly, Plaintiff may be willing to accept this answer as sufficient, under one condition: That this is the ONLY reasonable accommodation that they are allowed to say that they provided.  Remember that responses to interrogatories are under oath, and that means that they swear "to tell the truth, **the whole truth**, and nothing but the truth." Areas of interest are bolded for emphasis.  In other words, when asked for a list of reasonable accommodations, they must list EVERY SINGLE SOLITARY ACCOMMODATION they provided.

27.     Therefore, Plaintiff asks the Court to order the Defendant to provide an exhaustive and thorough answer to this Interrogatory, and to certify that each accommodation provided is listed in their response.

### Request for Production No. 2

28.     Plaintiff asked for "all footage of all the jail's cameras for every second" that Plaintiff was incarcerated.  The Magistrate Judge reasoned that, because "most" of the footage had been recorded over, that freed the Defendant from the need to provide whatever camera footage had not been recorded over.

29.     Plaintiff submitted the request for production on Defense Counsel at a time when Plaintiff

was still incarcerated, and he was released from pre-trial detention right as the discovery responses were due. This means that, even excluding the footage from Plaintiff's first trip to jail, the Defendant still would have had a whole 30 days worth of footage, as well as the footage that still existed immediately prior to their receipt of this discovery request, that they could have given to Plaintiff, had they merely preserved the footage by burning it all onto discs once they were notified that this footage was being requested.

30.     So why didn't the Defendant provide, at the very least, the footage of the week[1] immediately preceeding their receipt of the discovery request, as then, continuously provide more footage as it was created, until Plaintiff's second release from incarceration? They did not even TRY to offer an excuse for their failure to provide THIS footage; they did not even make the frivolous claim of "burdensome" (more on that in the next three sections); the simply ignored that portion of the discovery request, as if it never existed.

31.     However, the Magistrate Judge reasoned that, simply because "most" of the footage had already been recorded over, the Defendant didn't have to provide any. This is frivolous and should be overriden with a harsh reprimand to the Magistrate Judge.

### Request for Production No. 3

32.     The Magistrate Judge agrees with the Defendant that the request for production is unduly burdensome because it asks for disciplinary records of all inmates.

33.     This is only burdensome if disciplinary actions are not recorded. If they are recorded, compliance with this request for production becomes a simple matter of making copies of those records (in a systematic manner that will be discussed in greater depth when discussing Request for Production No. 4). If they are not recorded, then this calls into serious question the jail's

---

1   If footage only lasts for one week, then it stands to reason that, at the time the Defense Counsel received the discovery request, there was an entire week's worth of footage, within the scope of the discovery request, that they could have provided to Plaintiff, had they scrambled to preserve it.

competency in maintaining order in the jail.

34.     If anything, their objection is unduly vague. An objection to a request for production must include the reasons for the objection. See FRCP 34(b)(2)(B). Therefore, for their objection to be valid, they must specify why, exactly, the production of records which they most likely keep anyway is, in any way, "burdensome."

## Request for Production No. 4

35.     The Magistrate Judge states that this request is "too broad." As a police station, they clearly must keep records of all of their arrests. Surely, they must keep a database of their arrest records, documenting the time and place of arrest, as well as the arestee's name, race, sex, date of birth, and the crimes for which he was arrested, and then gives a case number. Subsequently, the entire arrest reports could be kept in manila folders, organized by case number, for easy retrieval.

36.     Perhaps this particular county does not do it exactly like that, but they are required by State law to record their arrests in some way.

37.     Subsequently, complying with a request for production becomes a simple matter of ...

   (a)     Searching the database for all arrests from the past few years that were about domestic battery,

   (b)     Recording the case numbers for all these cases,

   (c)     Finding the folders corresponding to all those case numbers,

   (d)     Making xerox copies of the arrest reports,

   (e)     Putting all those copies in a cardboard box, and

   (f)     Having their process-server and/or warrant-server bring the box to Plaintiff (or get Fed-Ex to do it; whatever).

38.     It sounds like a lot, but it actually would only take a couple of hours, assuming you tackle

the job in a systematic fashion. Plaintiff estimates (from his own personal experience doing similar jobs) that five hundred arrest reports could be copied in four hours if they were systematic about it. Simply jot down all the case numbers at once, take out all the manila folders at once, take them all to the copy room at one time (if you have to, use the trolley which the jail normally uses to deliver inmate meals), and systemtically copy each of them, in the order of their case numbers. Sure, compliance therewith may take all day, but even that is only 1/30 of the time initially allotted for responding to a discovery request!

39.    When the Defendant claims that the discovery request is "too broad," it seems as if what they are really saying is "duuuuuuuuuuuuuuuuuh... dat's a lotta work!" Their objection (and, by proxy, the Magistrate Judge's upholding of their objection) should be overridden.

### Request for Production No. 5

40.    Much the same logic established in Paragraphs #31 – 35 is similarly applicable here, and thus, those arguments are hereby incorporated by reference.

41.    However, the Magistrate Judge, in addition to finding the request to be extremely broad, also held that the discovery request does not give a specific time frame, and is not relevant. Plaintiff will tackle each of these systematically (just to show, by example, how easy it is to accomplish these things by using systemtic means).

42.    First of all, the Court's contention that no time frame is specified is legally irrelevant, as a court is not at liberty to raise discovery objections *sua sponte*. See FRCP 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure").

43.    The Defendant's objection that the request for production purports to request personal mail and email from Boone County officers does not excuse the Defendant from having to produce it. Only select, "sensitive" types of personal information is privileged from discovery

(including medical records; see the Emergency Motion to Amend Magistrate Judge's Order).

44.     Furthermore, even if personal mail and email were privileged from discovery, this does not excuse their complete failure to provide ANY income or outgoing mail and email.  See FRCP 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest").

45.     Relevance (for both personal and business mail and email) is not a valid objection, either. A litigant is entitled broad, sweeping rights regarding what is and is not "relevant" for the purpose of discovery.  Public policy requires a stricter definition of "relevance" when deciding what should and should not be admissible at trial, but during discovery, any potential strategy (so long as that strategy is not allowed under FRCP 11, such as vexatiously increasing the costs of the litigation in an attempt to engage in a war of attrition), the information requested pursuant to this strategy can be discovered.

46.     That being said, what if Plaintiff is merely seeking this information simply in an attempt to dig up dirt on the Defendant's officers so that he can discredit their testimonies with said dirt? Maybe that is what Plaintiff is trying to do, maybe it isn't, but that hypothetical possibility is all that is needed to make the information discoverable.  Therefore, the Magistrate Judge's reasoning that the information sought is "not relevant" is clearly erroneous.

### Request for Production No. 7

47.     The Defendant and Magistrate Judge are nit-picking too heavily on semantics. Plaintiff asked for criminal charges he had filed in the past three years.  Even if "charges" were the wrong word to use, this does not excuse the Defendant's failure to take reasonable steps to figure out what *pro se*[2] Plaintiff meant.

---

2   Under the precedent of *Haines v. Kerner*, 404 U.S. 519 (1972), Plaintiff is entitled to have his legal documents reviewed liberally.

48.     It is common in our society for a victim of a crime to often threaten "I'm gonna press

charges for this," or for a repentant criminal to beg the victim "please don't press charges," for a

police officer consulting with a potential crime victim to ask said potential victim "Do you want

to press charges?"

49.     Clearly, there is a process that citizens have at their *direct* disposal (as opposed to having

to go through the Prosecutor's office) that, in layment's terms, can be ascribed as "filing charges."

The Defendant's (and, subsequently, Magistrate Judge's) failure to realize this is nothing short of

mind-blowing.  Simply because Plaintiff did not use the "official" term for this process is

SUPPOSED to be entirely excusable under the precedent of *Haines v. Kerner*.  Therefore, the

Defendant's failure to provide the requested documentation is based on frivolous objections that

are founded upon their own lazy desire to not actually do any brain work.

### Conclusion of Argument I

50.     To wrap Plaintiff's appeal of the Magistrate Judge's denial of the second motion to

compel discovery, let us recap the arguments:

    (a)     Interrogatories Nos. 1 & 7 can be answered by contacting the former employees using

    their stored addresses and phone numbers.

    (b)     Interrogatory No. 2 is only sufficient if the Defendant is willing to lock itself into this

    explanation, and be barred from explaining away their omission in disciplining Jones should

    this explanation be refuted.

    (c)     Interrogatories Nos. 3 & 4 are insufficient because they do not even attempt to offer

    any evidence to support their theories.  They will not be able to introduce it at trial if they do

    not disclose it in discovery, and these interrogatories are their chance to do so.

    (d)     Interrogatory No. 5 only answered half of the question; where is the answer to the

other half?

(e)      Is the Defendant's response to Interrogatory No. 6 exhaustive of ALL accommodations provided?

(f)      The noncompliance of Request for Production No. 2 is entirely based on their own lazy failure to actually preserve the footage. Sure, some footage may have already been lost, but for other footage, the Defendant ALLOWED it to be lost.

(g)      Requests for Production Nos. 3 – 6 are only "burdensome" if your definition of "burdensome" is "having to get off the couch yourself, walk ALL THE WAY to the refridgerator, and actually pick up your next can of beer or soda with your own hands, and then walk ALL THE WAY back to the couch vs. having a spouse or child do it for you." Just go about it in a systematic manner, and it will be over before you know it.

(h)      Personal mail is not privileged from discovery.

(i)      Discovery is relevant as long as it even stands a chance of leading to admissible evidence, even if said "admissible evidence" is merely dirt Plaintiff could dig up on potential witnesses in order to discredit them.

(j)      The Defendant's response to Request for Production No. 7 is based on nit-picking semantics which, when you consider the fact that Plaintiff is *pro se*, should have been overlooked.

51.      Therefore, Plaintiff asks the Court to override the Magisrate Judge's decision and subsequently order that Plaintiff's Second Motion to Compel be granted.

## ARGUMENT II:  FIRST MOTIONS FOR SANCTIONS AND PETITION FOR ISSUANCE OF SUBPOENAS

52.      In Plaintiff's First Motion for Sanctions, he requested that the Defendant be sanctioned for their lazy and deliberate attempt to avoid discovery. As established in Argument I, the

Defendant's discovery responses are grossly insufficient, and their objections frivolous, for a variety of reasons, ranging from laziness, to the belief that unavailability of some negates the ability to produce all, to the belief that termination of employees eliminates their requirement to contact them for relevant information.

### Sanctions should be imposed. The Magistrate Judge got it plain wrong when he held that the Defendant's responses were even nonfrivolous, let alone sufficient.

53.     As established in Argument I, none of these objections are with any merit, despite the clearly biased Magistrate Judge saying otherwise.

54.     But it goes beyond the objections being merely meritless. These are the kinds of objections that people make when they are going out of their way to avoid having to cooperate in the litigation.

### Example #1: Lazy failure to make contact with past employees.

55.     First, there is the issue of the employees who no longer work for the company. Ok, that may eliminate the idea of just walking right up to them at their next lunch break and asking them these things, but come on! Any Reasonable Person (defined by the common law doctrine of the same name) sufficiently driven to have this case disposed of quickly and efficiently would have thought to himself "Hmmm, maybe the addresses and phone numbers for these people are still lingering around the Department somewhere! Let's go and look for them!"

56.     The Defendant's failure to try this approach is inexplicable by anything other than a desire to send Plaintiff on a "legal scavenger hunt" for lack of a better word. Such a strategy is expressly forbidden under FRCP 11 ("needless increase in the costs of the litigation"), and should be sanctioned accordingly.

### Example #2: Their ridiculous definition of "burdensome."

57.     Another example is how they refer to several discovery requests as being "burdensome,"

simply because it demands that they actually lift their fat arses out of their chairs and make some xerox copies of papers *that they already keep records of*! "Oh no; this guy is asking us to do office chores! How tedious and boring! Ooooh, the audacity of this man! How DARE he demand that we do, well, more of what we already do as a routine part of our daily job description; but ooooh, he wants us to do MORE OF IT!!! The unmitigated gal!"

58.     The requests for production of documents which were made are not "burdensome." The work required to comply with them may be tedious, boring, and may take a few hours to complete, but that is a far, far, FAR cry from what you could consider "burdensome." Now, if these records were never compiled in the first place, and compliance with these discovery requests would require that the Defendant spend hundreds of man-hours compiling the records for the first time, THEN the Defendant may have an argument that the requests are "burdensome." Plaintiff would still fight the objection, since the burden in that case would be self-imposed, but at least they could technically claim it as such. Until then, however, calling the discovery requests "burdensome" is merely Boone County Talk for "but I don't wanna!" and should garner Rule 11 sanctions accordingly (because this strategy was done out of an attempt to delay the litigation).

### Example #3:  Frivolous assertion of nonexistent privilege.

59.     Also, there is the issue of the Defendant thinking that personal mail is privileged from discovery.  This is simply ridiculous!  If the Defendant can, in its response to this Motion, provide even a single solitary case law, court rule, or federal statute that even arguably could be interpreted as making personal mail privileged from discovery, Plaintiff will withdraw his demand for sanctions on this issue.  He may still maintain his motion to compel discovery, depending on how applicable this legal authority is to the instant case and whether or not the

Defendant's reliance on it is misplaced, but it would at least be sufficient to defeat Rule 11 sanctions.

### Conclusion of Argument II

60.     For all of these reasons and more, the Defendant should be issued an appropriate sanction, so as to discourage the Defendant from engaging in this pattern of evasive tactics for the remainder of the case, and also to discourage future defendants who Plaintiff may sue from trying to pull the same crap.

### ARGUMENT III:  PLAINTIFF'S SECOND MOTION FOR SANCTIONS.

61.     The Second Motion for Sanctions is a little different than the first, as it requests sanctions under Rule 37, rather than Rule 11.  This seems weird, as Rule 37 sanctions are typically only appropriate if a pre-existing order compelling discovery has already been breached. However, for Plaintiff's Request for Production No. 2, breach of an order granting a motion to compel that discovery is inevitable.

### Total failure to even attempt compliance.

62.     As established in Argument I, the Defendant could have provided and entire 37 days worth of footage pursuant to that discovery request (that is... the seven days immediately preceeding their receipt of the request, and then the thirty days' worth of footage that was produced immediately thereafter, right before Plaintiff's second release).  But they refused to do so for absolutely no reason whatsoever; they did not even *attempt* to justify their failure with any kind of objection, let alone a nonfrivolous one; they simply refused to do what they could.

63.     Such an attitude is clearly deserving of sanctions; the only question is ... why under Rule 37?

## Inevitability of Sanctions; why wait? Inability is self-imposed.

64. Well, if we are to accept the Defendant's argument as true (that their footage only lasts for about a week before being automatically recorded over), then it stands to reason that, by the time the Plaintiff's Motion to Compel Discovery even became ripe for a ruling, let alone actually received a ruling, even the 37 days worth of footage they could have provided were it not for their own lazy inaction would have also been long gone, just like the footage from Plaintiff's first trip to jail; nay, even the final days of footage, leading up to Plaintiff's second release from incarceration, would have been gone by that point, like the fingertips of a man lost to quicksand (metaphorically speaking, of course).

65. Therefore, even if the Court were to issue an order compelling the Defendant to provide this footage, the Defendant would simply *have* to violate said order, because that footage is now just as nonexistent as the footage of Plaintiff's first time in jail. For this reason, it would be a stark waste of time and resources (for both Plaintiff and the Court alike) to wait for an "actual" violation of an order compelling discovery when we already know what's going to happen.

66. Of course, their inability to fulfill this order should excuse their inevitable failure to do so. Remember, said inability could have been avoided, if only they had actually done what they were asked to do. It is entirely THEIR fault that the availability of the last 37 days worth of camera footage is even an issue in the first place. The Court should have no sympathy for such a self-imposed disability.

## Why this specific sanction?

67. Of course, this leads to the question... why impose specficially the sanction that Jones' conduct be considered as established in Plaintiff's favor? After all, even if the Defendant had scrambled to provide the 37 days of footage they could have provided, none of that would have

depicted Jones doing anything illegal It wouldn't have shown him doing anything at all. In fact, it simply wouldn't have shown him, right? Why not impose the sanction that the events of the 37 days they could have provided be considered as established in favor of the Plaintiff?

68.     You could be correct in assuming these things, but that is not the point. Those who advance such an argument are doing so under the false premise of what sanctions under Rules 11 and 37 are designed to do. Rule 37(b) and Rule 11(c) govern the imposition of *sanctions*. Sanctions are punitive in nature; though they *can* "make whole" the Plaintiff and put him in a position that he would have been were it not for the sanctions-triggering action, this is not their primary function; their primary function is right there in the name: To sanction the offending party! Sanction, in this context, is a synonym for "punish."

69.     In order to accomplish this purpose, however, the Defendant must actually *feel* punished. If a criminal robs a store, and suffers a $50 fine, he is not actually being "punished" for his actions because he still came out in a better position that he did when he started. To *feel* punished, the bad consequences that attach to the Defendant's actions must outweigh the benefits thereof.

70.     So, to answer the question that Plaintiff knows the Court has: "Why not impose the sanction that the events of the 37 days they could have provided be considered as established in favor of the Plaintiff?" The answer is: The only evidence that it was likely to provide, as far as this instant case is concerned, is establishing the ATMOSPHERE of the jail, and establishing that jail guards are heavily trusted and are never investigated for their actions, no matter how serious the accusations may be. This evidence would be USEFUL in establishing municipal liability (because it would show the existence of a very "hands-off" policy on the part of the Jail Administrator) but it would still be circumstantial. Thus, if such a sanction were imposed, the

Defendant would likely not *feel* punished, as there is a good chance that they would have simply shrugged and said "Hmph, it's a small price to pay!"

**Problem with current jail policy: Golden evidence is gone!!!**

71. On the other hand, think about what it would mean if the camera footage of Plaintiff's first trip to jail were produced? There would be nothing "circumstantial" about the evidence provided by THAT footage!

    (a) The footage would either show Jason Jones peeping inside Plaintiff's cell with the look of a mischevious child on his face, or it wouldn't.

    (b) It either would have shown Jones storming into Plaintiff's cell, swinging his arms like a maniac, with a look of terror on Plaintiff's face, or it wouldn't.

    (c) It would have either shown Plaintiff – at a time when Jones was reportedly working in the "Bubble³" – yelling into the intercom while being bombarded by inmate harassment, without any help coming for Plaintiff, or it wouldn't.

72. With such definitive evidence one way or another, there would be no need for further discovery, no need to call witnesses, no need to pull jurors away from their daily lives. The issue of whether or not Jones did the things accused of in the Complaint of this case would be concretely established, one way or another. Either Plaintiff would be proven right, and Jones proven to be a damn dirty liar, or it would be the other way around. The only things left which could possibly necessitate a trial would be …

    (a) whether or not Jason Day – the Jail Administrator – knew of Jones' actions (whether by personal observation of them or through Plaintiff's grievances of same) and failed, for whatever reason, to put a stop to them and/or discipline Jones for the things he already did,

---

3  A small "control room" in the middle of the inmate area from which all electric doors are opened, all lights are turned on or off, and to which all inmate intercoms are connected. So, if an inmate activates his cell's intercom, he can only speak with the person in the Bubble, and not any other officer.

and

(b)     If Day did turn a blind eye to Jones' conduct, what damages did Plaintiff suffer, and how much in punitive damages should the county have to pay as punishment?

73.    Now, Plaintiff knows what some people are currently thinking: Just because the evidence is so definitive does not mean that treating this evidence as established should be the appropriate sanction. In fact, there is a strong argument that this would be an overly HARSH sanction, precisely *because* of the definitive nature of this evidence.

74.    Although Plaintiff does understand the logic of both sides, perhaps Plaintiff's goal in recommending this specific sanction is not MERELY to punish the Defendant's conduct in not making haste in producing the final 37 days worth of camera footage, but also, to punish the Defendant for its pathetic policy of keeping camera footage for merely a single week. It is because of that policy that we cannot enjoy the benefits fantasized about in Paragraphs #71 and #72. If the Defendant kept its camera footage for merely a year, we could enjoy those benefits. Perhaps the sanction is to punish the Defendant for making both Plaintiff and the Court expend a great deal of time and resources adjudicating a matter that SHOULD be over with in one fell swoop.

75.    But how much would it cost the County taxpayers to store *an entire year's* worth of footage? Surely, the overbearing cost of such an astronomical amount of hard drive space would justify the Defendant not having it, right? WRONG!

76.    Notice Exhibit A. This exhibit establishes that storing a year's worth of camera footage would require only 16TB of storage space per camera. Assuming that the jail has 100 cameras to store the footage of, and the cost of buying enough storage space for all of them is $139,000, and they could do so in compactly.

77.     Does that sound like a lot of money?  Well it IS a lot money... for an individual. But it is pocket change for a local government, even a small one like Boone County. Notice Exhibit B, which shows that the Defendant had MORE THAN SIX TIMES this amount in unappropriated funds just in the last fiscal year alone.

78.     It seems as if the reason the Defendant's camera footage only goes back one week is NOT because they cannot afford anything better, but rather because they enjoy being able to dictate, at their own whim, who gets to see the footage, and what footage they get to see (because the footage is overridden so quickly that any attempts to secure the footage by third parties by legal means to do so would be virtually impossible).  Why?  "Because having this kind of control GIVES US POWER!!! MWAH HA HA HA HA!!!"

79.     Therefore, perhaps the Defendant should be punished for having such a ridiculous and totally inexplicable policy of automatically and routinely deleting evidence of the most pobative sort, simply because they can (and not because they're doing the best they can).  This case cannot possibly be the first where a Plaintiff has been screwed over by such a stupid, easily fixable problem.

**Illegality of above-stated practice.**

80.     At this point, the Court is probably thinking "Well, it is their right to do with, and do away with, their property as they see fit.  You would enjoy the same right if you possessed any camera footage yourself.  It is a legal practice that the Court has no authority to prohibit or punish."

81.     The problem with this logic, however, is that it is based on a false assumption:  That it does not serve any unlawful function.  Forcing plantiffs to rely on circumstantial evidence of questionable trustworthiness and reliability (such as the testimony of other inmates) causes an

increase in time and costs of the litigation. A case which should be over in one fell swoop, with only a couple hundred dollars spent (excluding filing fees) subsequently becomes a multi-thousand dollar case that takes months, maybe even years, to sort out. Jurors have to be pulled from their daily lives; plaintiffs have to spend thousands litigating the case, upon which the Defendant would enjoy an enormous advantage (as previously established, Boone County farts this much money, whereas many Plaintiffs – especially civil rights inmates – have virtually no resources at all to throw at a case like this).

82.     Therefore, this policy is unlawful under FRCP 11, which prohibits this kind of "war of attrition" strategy. Therefore, the Court has not only the authority, but a duty, to sanction and prohibit this practice.

### Suggestion for Alternative Sanction

83.     While typing up this motion, a new idea for a sanction popped into Plaintiff's head: The Court could order that municipal liability for Jones' actions be construed as established, and if it is proven that Jones engaged in any kind of unlawful conduct against Plaintiff, the County would automatically be vicariously liable for his actions. In short, the Court could order as established the fact that the County knew of Jones actions (assuming they can be proven in the first instance) and allowed them to take place.

84.     This would be much more directly connected to the evidence that the 37 days worth of footage they could have provided would have given to us. The evidence contained therein would likely have been circumstantial, but the Court could issue a sanction that would make it NOT circumstantial. The Court could subsequently instruct the jury that, if Jones' conduct had been proven, the County should be liable to the same extent that Jones would be, just like with private corporations.

85.    This is a much closer sanction to the action which triggered it than simply demanding that Jones' actions themselves be construed as established, and it would still be detrimental enough that it would actually count as a punishment for the Defendant's laziness in their failure to fulfill the discovery request to the extent that they were able.

### Conclusion of Argument III

86.    To bring this argument to a close, let's recap:

(a)    The Defendant deserves to be sanctioned due to their failure to respond to this discovery request. They never even attempted to give any semblance of compliance, even to the extent that their objections did not apply.

(b)    Because of the nature of the objection (to the extent that it DID apply), they would be incapable of providing this footage if ordered to do so. Their failure to provide it when they had the chance creates a permanent inability to do so.

(c)    The permanent inability to do so should not excuse their failure to do so upon order, as the permanent inability to do so was created by their own, inexcusable laziness and omissions.

(d)    The sanctions imposed should be reasonably related to the actions which gave rise to the sanction.

(e)    The sanctions imposed must be at a level the Defendant considers "harsh," otherwise it fails to meet its purpose as a punishment.

(f)    The best way to comply with both sub-paragraphs (d) and (e) would be to order that something that could have been provable by the camera footage be construed as established in Plaintiff's favor. This should include either Jones' conduct, or the County's vicarous liability for it.

87.     Threfore, the Second Motion for Sanctions should have been granted, and the Magistrate Judge's decision to deny it constitutes a clear error of judgment.

## ARGUMENT IV:  THE PETITON FOR ISSUANCE OF SUBPOENA

88.     The Magistrate Judge is clearly attempting to prevent Plaintiff from being able to supboena witnesses.  First, he refuses to issue subpoenas until a scheduling order is filed.  Then, he says that witnesses should only be subpoenaed a measely month prior to the trial (which has not even been set yet in this case).

89.     Subpoenaing witnesses are more important that merely ensuring their appearance for trial.  What if Plaintiff wants to *depose* these witnesses?  Most of the witnesses whose subpoenas were requested were hostile witnesses, so it would make perfect sense that Plaintiff would want to depose them.

90.     Therefore, Plaintiff asks the Court to overrule the decision of the Magistrate Judge and grant Plaintiff's Petition for Issuance of Subpoena.

## FINAL CONCLUSION

91.     To wrap up this incredibly long Brief in Support of Motion, let us recap the main points:

(a)     The Defendants' objections to discovery are frivolously routed, not in good faith, but in the Defendants' lazy failure to actually get off their fat butts and actually do some work, their frivolous assertion of nonexistent discovery privileges, and their desire to nitpick about semantics when they clearly knew (or should have known, given the societal norm of using the phrase "filing charges") what Plaintiff meant.

(b)     Defendants' Response to Interrogatories Nos. 2 & 6 are only sufficient if they are willing to lock themselves into the exclusivity of those responses.

(c)     Because of the bad faith, laziness, and frivolous reliance on nonexistent privileges

and semantics, the Defendants should be issued an appropriate sanction for violating FRCP 11.

(d)    Because the aforementioned bad faith has caused some of the evidence that should have been discovereable to be forever lost, they should be sanctioned under Rule 37 for the inevitable violation of any future order compelling said discovery.

(e)    Finally, the Magistrate Judge is exhibiting clear bias in continuously drawing back the date when Plaintiff may subpoena witnesses, and is even preventing Plaintiff from deposing witnesses.

92.    Wherefore, premises considered, Plaintiff respectfully requests that the relief spoken of in Paragraph #2 of the Motion that this Brief supports be granted, costs incurred be awarded, and other relief that the Court finds appropriate.  So requested on this 12th day of August, 2013.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St.
APT D.
Harrison, AR 72601

U.S. District Court
35 E. Mountain St.
Room 510
Fayetteville, AR 72701

CPU U.S. POSTAGE
PB 1P 000        $ 1.720
3660515     MAILED
FCMF        AUG 12 2013
            72601