U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
AUG 13 2013
CHRIS R. JOHNSON, CLERK
BY
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                          PLAINTIFF

VS.                                      CASE NO. 12-3022

BOONE COUNTY, AR                                                        DEFENDANTS

## OBJECTION TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

1.   Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Objection the Magistrate Judge's Report & Recommendation, entered on August 1, 2013.

**Negligence, as opposed to malice, on the part of the Defendant is automatically disputed.**

2.   The Magistrate Judge recommends judgment in favor of the Defendant because the record suggests that the Defendant's officers were merely negligent in not allowing Plaintiff to post bond.

3.   There is no evidence to conclusively establish, to the point of entitling Defendant to judgment as a matter of law, that their misapplication of the Court's order was accident rather than design. The closest one could come to finding evidence of intent (or lack thereof) is the officers themselves *claiming* that it was an accident. Whether they are telling the truth or not is a question for the jury, not the Court. See the following case laws:

- See United States v. Azure, 801 F. 2d 336, 340 (8th Cir1986) ("[C]ompetency is for the judge, not the jury. Credibility, however, is for the jury — the jury is the lie detector in the courtroom.").

- United States v. Whitted, 11 F. 3d 782, 786 (8th Cir. 1993) (using the word "exclusive" describe the jury's "province to decide witness credibility," and even overturning a verdict simply because the judge allowed the testimony of a witness to testify as to the credibility of other witnesses. This case is even worse, as the Magistrate Judge is

attempting to fully usurp the function of the jury altogether, and decide for himself the credibility of the witnesses).

4. These are only two of literally dozens of 8th Circuit cases that repeatedly affirm what is common knowledge among legalists: That the judge decides the law, but the jury – and ONLY THE JURY – decides the facts.

5. In fact, since the Court can take judicial notice of the interest of the witnesses provided by the Defendant (as the witnesses are themselves officers of the jail, whose careers stand to suffer severe ramifications based on the outcome of this case), their testimony is automatically controverted, without the nonmovant even having to offer any evidence of his own. See First Nat. Bank of Roland v. Rush, 785 SW 2d 474, 479 (1990), which held that where "the only testimony with regard to these factual matters was given by [the defendants themselves] ... the testimony of an interested party is never considered uncontradicted or uncontroverted," which is prerequisite to summary judgment.

6. This case law was indeed quick to point out the trial court is not required to reject the testimony if finds the testimony to be worthy of belief, but an important keyword in that exception is the word "trial." Even if a bench trial is consented to (which it is not in this case), that is the exclusive process for resolving disputed facts.

**Defendant does not have a "penological interest" over Plaintiff.**

7. In issuing his recommendation on Plaintiff's Second Motion for Partial Summary Judgment (and subsequently, the Defendant's Motion for Partial Judgment on the Pleadings thereof), the Magistrate Judge claims that strict scrutiny does not apply in this case. However, his reasoning is based on the heavily flawed assumption that the jail's censorship policies serve a legitimate "penological" interest; in other words, the stripping of these rights is a part of the

punishment that a person receives for commiting a crime.

8. The Magistrate Judge's reasoning, however, is based on the unstated assumption that the Defendant in this case has a penological interest over the Plaintiff, an interest which they simply do not have. This is the kind of interest the Defendant would have over the Plaintiff if he were serving a sentence for a crime. However, the purpose of pre-trial detention is not to punish a person for his crimes; it is to ensure that he appears for trial to determine whether or not he is guilty of those crimes and deserves punishment. Then, and only then, would the government have a "penological" interest over Plainitff.

9. Until that day, the detention center housing a pre-trial detainee has only one interest: Ensuring his appearance for trial, and absolutely nothing else. Until Plaintiff is convicted, the Magistrate Judge's reasoning that the censorship is penological – and with it, his justification for not using strict scrutiny – falls apart at the foundation. Indeed, Plaintiff is left scratching his head at how the Magistrate Judge can, with a straight face, argue that the censorship served a legitimate penological interest, then turn around and, in the exact same document, embrace the premise that the Defendant has no business "punishing" Plaintiff until Plaintiff is convicted when discussing the legality of the Defendant's forced labor policy (which we will later in this Objection Brief).

10. Even the case of Bell v. Wolfish, 441 US 520 (1979), which appears at first glance to reject the strict scrutiny analysis for pretrail detainees, has provided an exception to its own rule big enough to land a plane inside of it:

> "[T]hat Clause[1] provides no basis for application of a compelling-necessity standard to conditions of pretrial confinement **that are not alleged to infringe any other, more specific guarantee of the Constitution.**" See id at 533.

---

[1] In the 14th Amendment, which states that "nor shall any State deprive any person of life, liberty, or property, without due process of law."

11. The last few words are bolded for emphasis. The Surpeme Court specifically stated that pretrail detaineess still enjoy strict scrutiny protetion for *specific* guarantees of the Constitution – such as Free Speech. The Supreme Court clearly acknowledges that strict scrutiny would be appropriate if a specific constitutional right were infringed upon. In fact, throughout most of the opinion, the SCOTUS explicitly and unambiguously rejects the Magistrate Judge's reasoning that pre-trial detention centers have a "penological interest" over inmates:

> "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, ... the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest. Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictionsdo not amount to punishment, or otherwise violate the Constitution." See *id* at 535-537 (internation quotations and citations omitted).

12. There it is in black and white. Therefore, Plaintiff is still entitled to strict scrutiny protection of his First Amendment rights, as the so-called "penological" interest – the only thing which could entitle the government to something less – is not present here. The jail guards should be required to have the same "tough skin" to harsh words that any other citizen is expected to have.

**General speech censorship in no way improves order in the jail.**

13. Although the Magistrate Judge states that the censorship rule serves a "penological" interest, the excuse and justification the Defendant actually GAVE was that the rule assisting in maintaining order in the jail.

14. Despite all of the objections which Plaintiff has made in the above section, Plaintiff does

concede to one thing: Plaintiff knows, from first-hand experience in dealing with other inmates, that 90% of the people who are incarcerated there are violent, unpredictable, and short-tempered. Many of them are genuinely guilty of their crimes, and are not afraid to commit another violent crime if another inmate gets on their nerves.

15. Because all of these violent people are not spread out across society, but are instead all placed into one spot together, a variety of jail policies that would not be constitutional in the free world passt strict scrutiny analysis in the jail world. This is because the atmosphere of general suspicion and the heightened risk of violence breaking out necessitate the imposition of additional precautions in order to maintain order. If you look at the Jail Rules & Regulations, you will notice a variety of constitutionally-questionable policies that Defendant has regarding its jail, which Plaintiff does not challenge in this case for precisely the reason specified in this paragraph. These policies include, but are not limited to, the following:

(a) Inmate organizations are not allowed.

(b) Communication with inmates outside of your pod (regardless of what you are saying) is prohibited.

(c) Items for personal enjoyment (such as playing cards) are not allowed unless obtained either through the jail staff (such as books) or purchased through a trusted commissary merchant (shades of the policy in the *Bell* case limiting inmates' access to books).

16. These policies are constitutional, not merely because they "assist" in maintaining order in the jail (if that was all it took, even free citizens would have to put up with the things that detainees must put up with, as the necessity for such drastic measures would be legally moot), but because they truly are the "least restrictive means" (which is one of the prongs of strict scrutiny) for obtaining order, given the sensitivity and volitility to security and order that the

aggressiveness of the standard inmate presents.

17. Paragraphs #14 – 16 were designed to set up for the following argument: Although SOME degree of speech censorship may indeed suffice to pass strict scrutiny, given the sensitive and risky environment they are trying toc ontrol, the Defendant in this case goes the full hundred yards and requires inmates to treat officers "with respect and courtesy." This is far above and far beyond anything the jail could ascribe as "absolutely necessary" to maintain order in the jail; rather, it seems designed to protect the jail guards from merely having their feelings hurt, rather than protecting them from any kind of unlawful harm.

18. Furthermore, because the Defendant failed to articulate, when it had the chance to do so, why such a broad and sweeping policy is the least restrictive means of maintaining order in the jail, they have forfeited their opportunity to raise it in order to justify their policy. "Generally, failure to plead an affirmative defense results in a waiver of that defense." See *Sherman v. Winco Fireworks, Inc.*, 532 F. 3d 709, 715 (8th Cir. 2008).

**Defendant muts PROVE that their policy is the least restrictive means.**

19. Last but not least, even if all of the contents of Paragraphs #7 – 18 prove insufficient to persuade the Court to grant Plaintiff's Second Motion for Summary Judgment, then the Defendant's Motion for Judgment on the Pleadings should similarly be denied. Why? Because even if the Court were to allow the Defendant to allege the necessity of such sweeping censorship, notwithstanding the provisions of Paragraph #17, that only allows them to survive Plaintiff's partial summary judgment motion; it does not entitle them to judgment as a matter of law, at least not yet.

20. Why not? Because they still have to actually PROVE it! They must offer more than mere speculation and conjecture; they must offer emperical evidence to actually *prove* that the

likelihood of a riot and/or harm to a jail guard will skyrocket to unaceptable levels simply by allowing inmates to disrespect or insult jail guards. Prohibiting the *threatening* of jail guards is one thing; but the mere insulting of them? Defendant has yet to show actual EVIDENCE that allowing such conduct would cause jail guards to be stabbed or whatnot.

21.     Evidence of this nature would not even be that hard to come by, either! Any combination of the following proofs could go a long, long, LONG way towards established the necessity of such broad censorship:

22.     However, the Defendant is the one who is going to hold the burden of proof on that issue because, as established in Paragraphs #7 – 12, strict scrutiny is the appropriate level of scrutiny to apply to this law (due to a lack of a penological interest), and therefore, the government supporting the law has the burden of proving that it is constitutional. See *Miller v. Johnson*, 115 S.Ct. 2475, 2490 (1995) "To satisfy strict scrutiny, the [government] **must demonstrate**[2] that its [law which restricts a fundamental right] is narrowly tailored to achieve a compelling interest.".

23.     Furthermore, remember that the Judge has no authority to weigh the evidence and decide for himself. Since the Plaintiff is demanding an award of damages, the case qualifies for a jury trial, which means that only the jury can decide whether or not this Rule of the jail, as a matter of ultimate fact, proximately causes a suitable increase in order and security inside the facility.

24.     Now, after the jury trial is over, this Court could, upon motion, reduce the award of the jury on the grounds that the Defendant had a nonfrivolous reason for believing that its rule was constitutional, and thus they are protected from liability via qualified immunity. However, to obtain even that, they must first show at least some semblance of emperical evidence to give even the appearance of good faith behind their policies; remember that qualified immunity does

---

2   The burden to demonstrate is the same as the burden of proof, just phrased differently; distinguishing the two
    concepts would be like distinguishing lawyers from attorneys, or distinguishing countries from nations

not protect governmental officers whose actions violate clearly established law, and it is clearly established that (A) the government holds the burden of proof in a strict scrutiny case, and (B) Defendant has no penological interest over Plantiff, the only thing which could possibly entitle them to something less than strict scrutiny. This means that it is clearly established that, to prevail on a constitutional challenge on this issue, the Defendant must offer more than mere arbitrary conclusions derived purely from speculation and conjecture which they pulled completely out of their butts with no evidence to back it up; they must demonstrate that their actions were motivated by what they (truly and in good faith) believed to be cold hard emperical facts.

### Magistrate Judge's "theraputic" defense is waived.

25. We now finally address the Magistrate Judge's Report and Recommendation on Plainitff's Third Motion for Partial Summary Judgment, and the Defendant's conflicting motion for judgment on the pleadings. In this Report & Recommendation, the Magistrate Judge concedes that the Defendant has no penological interest over Plaintiff (weird, considering how his entire previous segment was based on the assumption that they did), but concluded that the policy of forced housekeeping labor is constitutional because it serves a "theraputic" interest, rather than a penal one, or for the interests for the jail guards themselves.

26. However, the Defendant did not use this defense in its Answer to Complaint, or in its Response in Opposition to Motion for Partial Summary Judgment. Therefore, the Defendant has waived this defense. The contents of paragraph #18 are hereby incorporated by reference. They are stuck with the defenses which they have raised.

### The "theraputic" defense, even if allowed, is unproven.

27. The Magistrate Judge is once again attempting to usurp the function of the jury and

decide for himself the disputed fact of whether or not the Jail's rule of forced labor actually serves a "theraputic" interest (while still assuming that they actually have it). When fundamental rights are concerned, it is insufficient to merely CLAIM that a law or policy serves some sort of legitimate interest. As established in Paragraphs #19 – 24, the government who supports a law which restricts a fundamental right holds the burden of proving that this law is narrowly tailored to meet a compelling government interest, which means that they must actually PROVE that it does.

28. One case which comes immediately to mind is the political controversy surrounding video games, particularly ones which tend to depict extreme acts of violence or harsh language (usually rated "M" for "Mature"). A few years ago, governments across the nation were attempting vehemently to regulate the sale of these games to persons under the age of 17 unless a parent or legal guardian was purchasing the game for the child. The Entertainment Software Association (a guild of the world's largest video game publishers) fought the governments of this nation at every turn, and got these laws stricken as unconstitutional with 100% success rates, often before the newly-passed laws even went into effect.

29. How did they do it? They discredited the studies upon which governments relied which claimed that violent video games lead to violent behavior. The ESA showed that these studies were inconclusive at worst, and circumstantial at best, and because of their lack of probativeness on the issue, the government had failed to meet its burden of proof that the laws they passed genuinely served the interests they purported to serve, and thus the laws were unconstitutional.

30. That era in American jurisprudence left a clear precedent regarding constitutional law: To pass strict scrutiny, it is insufficient to merely CLAIM that a compelling interest is served by a particular law, ordinance, or policy. They must actually SUBSTANTIATE their claims. With

*evidence!* And facts! And proof! And evidence!

31.     Likewise, in the instant case, if the Defendant has this policy out of an interest in "therapy"-ing (for lack of a better word) the inmates, they must prove (and they must actually *PROVE* it) the following elements:

   (a)   That they have a *compelling* interest in forcing theraputic treatment onto a person who doesn't want it, even without it being established that he did anything wrong[3],

   (b)   That forced housekeeping duties actually are theraputic (and they're not just *claiming* that they are), and

   (c)   That there are no other means of obtaining the same amount of theraputic treatment that do not tread upon specific constitutional guarantees such as the right to be free from involuntary servitude except as punishment for a crime.

32.     Furthermore, it bears repeating (since clearly the Magistrate Judge doesn't understand this basic concept; it apparently has to be hammered in): Whether or not the Defendant has proven all of these elements IS FOR THE JURY TO DECIDE!!! NOT THE JUDGE!!!

...

NOT THE JUDGE!!!

. . .

# *NOT THE MOTHER-F***ING JUDGE!!!*

---

[3] because, as we've established, the County has no penological interest in Plaintiff unless he is convicted; see *intra*, Paragraphs #7 – 12.

## Conclusion

33. In conclusion, it is becoming more and more obvious that the Magistrate Judge simply has a vendetta against Plaintiff. His clear usurpation of power, attempt to decide the facts in place of the jury, and complete disregard of how summary judgment is supposed to work shows that he is either malevolent or incompetent.

34. Wherefore, premises considered, Plaintiff respectfully requests that the Report and Recommendation be rejected, that Plaintiff's Motions for Partial Summary Judgment be granted (or at least, that the Defendant's motions be similarly denied), that all future motions in this case be given to a different magistrate judge, costs incurred be awarded, and other relief that the Court finds appropriate.

35. So requested on this 12th day of August, 2013.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St.
APT D
Harrison, AR 72601

U.S. District Court
35 E Mountain St.
Room 510
Fayetteville, AR 72701



CPU U.S. POSTAGE
$ 1.720
PB 1P 000
3660515
FCMF
MAILED
AUG 12 2013
72601