U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

AUG 2 2 2013

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF ARKANSAS

**DAVID STEBBINS**                                                      **PLAINTIFF**

**VS.**                              **CASE NO. 12-3022**

**BOONE COUNTY, AR**                                          **DEFENDANTS**

### REPLY TO RESPONSE TO OBJECTION TO MAGISTRATE JUDGE'S ORDER
### AND MOTION FOR MENTAL EXAMINATION

      Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Reply to

the Defendant's Response to the Magistrate Judge's Order, as well as Motion for Mental

Examination (since either party may request one).

1.    First of all, the Defendants do not deny the factual allegation that they failed to make

reasonable attempts to resolve the dispute without court action, nor do they even *attempt* to offer

any argument or legal authority to refute Plaintiff's claim their failure to do so strips the Court of

jurisdiction to consider the motion. Therefore, that issue remains unchallenged, and since it

relates to a nondispositive issue, that means that Plaintiff is entitled to prevail automatically on it.

See AR Local Rule 7.2(f): "The failure to timely respond to any nondispositive motion... shall

be an adequate basis, without more, for granting the relief sought in said motion."

2.    Barring this, the Defendant alleges two main points in its Response:

    (a)    They deny that Plaintiff's mental injuries are axiomatic.

    (b)    Plaintiff has not provided the limited medical release which he admits would be

discoverable.

3.    Neither of these points have merit, and Plaintiff will prove that claim by systematically

defeating each point, one at a time.

**Aspergers' authorization was never provided because no form was provided.**

4.     Although this was addressed last by the Defendants in their Response, Plaintiff will address it first in this Reply, as it is the easiest to dispose of.

5.     Defendant is correct in acknowledging that Plaintiff has conceded that evidence of his Asperger Syndrome would be discoverable in this case. However, they claim that, because Plaintiff has not provided this authorization despite acknowledging it as legitimate discovery, that Plaintiff has simply ignored the discovery. This is simply not true.

6.     Plaintiff has not authorized the release of the few medical records he concedes to the discoverability of because...

   (a)     He has not been provided with a release form that is specific to that one subject-matter,

   (b)     The form provided to Plaintiff already had the scope and dates already filled in, with no opportunity for the Plaintiff to change them, and

   (c)     It is not Plaintiff's responsibility to *create* his own medical authorization form.

7.     Indeed, in Plaintiff's Response in Opposition to the Defendant's Motion to Compel Discovery, Plaintiff specifically stated the following ...

> "If the medical records release form only authorized the release of medical records documenting the fact that I have Asperger Syndrome, then that would have been fine; I would have signed the release."

... proving that he is willing to provide this limited authorization if given the means to do so.

8.     Even if Plaintiff were expected to create is own form, he was unable to do so at the time the discovery was due. He was incarcerated at the time (which is why his responses are handwritten), and thus, simply had no access to any machines that could enable him to type anything about. By the time Plaintiff learned that the Defendants took exception to his objection,

it was too little too late; the motion to compel had already been filed, and he had to fight that motion. See, it is for cases exactly like this one – where the Plaintiff is *willing to cooperate* to the extent that he concedes to the litigimacy of the discovery – that the Judiciary even HAS the rule in the first place that parties must make reasonable attempts to resolve the discovery disputes without court action (something which, again, the Defendants simply have not done).

### Plaintiff's mental injuries are, indeed, axiomatic.

9.      Defendant states that Plaintiff's injuries are unproven. Apparently, they seem to be confused on what exactly counts as "evidence" of an injury. They seem to believe that there is no mental or psychological injury without medical diagnosis. Akin to the now-obsolete "no body, no murder" rule of English common law.

10.     A similar argument was addressed by the Arkansas Supreme Court in *Growth Properties I v. Cannon*, 282 Ark. 472, 669 S.W.2d 447 (1984) in connection with an appeal from a verdict rendered in a tort of outrage case. The court in *Growth* stated as follows:

> "Appellants' first two points for reversal may be treated as one—that it was error
> to award either compensatory or punitive damages in the absence of proof of
> actual damage. They submit that none of the appellees testified to any loss or
> injury "except rather vague references to feeling bad about it, or being
> `heartsick'." But the answer to the argument lies in the fact that the essence of the
> tort of outrage is the injury to the plaintiff's emotional well-being because of
> outrageous treatment by the defendant. If the conduct is sufficiently flagrant to
> give rise to the tort, then the injury the law seeks to redress is the anguish itself
> and it need not rest, parasitically, on more demonstrative loss or injury.... Hence,
> mental anguish itself is the actual damage, and proof of special damage in terms
> of out-of-pocket expenses of exact pecuniary measurement is not essential to a
> recovery of compensatory damages." Id. at 474, 669 S.W.2d 447.

11.     Now, in that case, the Plaintiffs only got $1,500 to $2,500 in compensatory damages. However, in the case of *Peoples Bank & Trust Co. v. Globe Intern.*, 786 F. Supp. 791 (W.D. Ark 1992), the Plaintiff's estate got a whopping $650,000 in emotional distress damages (worth more than a million dollars in 2011, according to the inflation calculator Plaintiff previously used in

his Second and Third Motions for Partial Summary Judgment). On order denying the Defendant's motion to reduce the award, the at-the-time Chief Judge of this Court held ...

> "It may be, as defendant in essence argues, that [the Plaintiff] does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence..., that [the Plaintiff]'s experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

12.     That excerpt takes the words right out of Plaintiff's mouth; it perfectly encapsulates Plainitff's stance in the instant case.

13.     Therefore, as the Court can clearly see, it will be the mental anguish that Plaintiff was experiencing *at the time that the harassment and bullying was taking place* (e.g. the barrage of insults, the not knowing if he would even make out of there alive, let alone in one piece, etc.) that the Defendant will have to compensate Plaintiff for, and that is something that a doctor will not be capable of ascertaining.

14.     At the very least, a doctor would be no *more* capable of ascertaining the existence of such an injury as any other registered voter who stands an equal chance of being called to jury duty in this case. Remember that "the jury is the lie detector in the courtroom." See *United States v. Azure*, 801 F. 2d 336, 340 (8ᵗʰ Cir. 1986). It will be the *jury's* decision, and no one else's, whether Plaintiff actually suffered emotional distress, or if he is just faking it for free money.

15.     Even if the jury decides that Plaintiff did suffer emotional distress as a result of Jones' conduct (and, by proxy, the County's failure to put a stop to it when they had the chance), it would still be the jury's near-exclusive perogative to decide whether Plaintiff's compensatory damages are valued at one dollar, or five million dollars. "This court is certainly in no better position to determine what that is 'worth' than [a panel of] jurors picked from the citizenry of the

Harrison Division of the Western District of Arkansas to hear and decide this case." See

*People's Bank & Trust v. Globel*, 786 F. Supp. 791, 796 (W.D. Ark. 1992).

### Even with the limited time range, their request is still overly broad.

16.    The Defendant argues that they are only requesting medical records from January 1, 2009

to the present... as if that somehow makes every other problem with their request magically

disappear.

17.    The Defendant is nonetheless requesting *everything* in Plaintiff's medical records,

regardless of subject-matter.  This is *still* overly broad, and indeed, it was this very overbredth

which has formed the basis of Plaintiff's objection.  Recall, Plaintiff mentioned that the

Defendants were demanding all his medical records "from the day he was born."  But that was

just an afterthough.  Remember, the main concern that Plaintiff had was not the *time period* from

which medical records were being pulled, but rather, the *type* of records which were being

pulled.

18.    Think about it:  Is it really necessary to the disposition of this case that the Defendant

know about Plaintiff's trip to the hospital last year for abominal pains?  Do they really need to

know what tests were performed on Plaintiff, what the doctors diagnosed as the cause of the

pains, or what medications were prescribed?  How is that, in any way shape or form, even

ARGUABLY something you could describe as "potentially relevant to this case?"

19.    Yet, that falls within the scope of what the Defendant has demanded of Plainitff.

Disclosure of medical records should be limited ONLY to what is absolutely necessary to the

disposition of the case, and *absolutely nothing else*!!!

### Motion for Mental Examination

20.    Given all that, Plaintiff does concede to one issue:  The entitlement to knowledge of

Plaintiff's medical condition does in fact leave the Defendants in a catch-22. Because of the medical privilege, they cannot see any medical records from Plaintiff unless they have already fingered them as definitively relevant to the case; but sometimes, you need to see the records before you can determine whether they are relevant or not. At first glance, this would indeed appear to place quite a few litigants (not just these Defendants) in a catch-22.

21.    However, both the Defendants and the Magistrate Judge seem to think that the only solution to this catch-22 is to simply choose one over the other.

22.    First of all, even if that were the case, binding precedent still requires that the medical privilege be given precedence over the other party's right to discovery. See *Roe v. Wade*, 410 US 113 (1973), a controversial precedent due to its effect of forcibly legalizing abortion; however, even if that specific application were overturned by a future SCOTUS case, no one would ever dare challenge the foundation upon which the precedent was officially based: That a person has a fundamental, inalienable right to medical privacy, even in the face of reasonable suspicion that relevant evidence can be found inside the medical records. Plaintiff uses this specific case law because it is the most glaring example ... glaring, not because of how well known it is (though that certainly doesn't hurt), but because it was a homicide case. Yes, *homicide*, where the public's interest in justice was at its strongest, and yet, the Supreme Court *still* held that the one person's right to medical privacy trumped the interests of more than 11 million (according to the 1970 U.S. Census) people of the State of Texas. If medical privacy can survive a challenge like that, it surely can survive any challenge, especially a case like this one, which no one would dare argue is even remotely as serious as a homicide case.

23.    Second, it is a mistake to assume that you must choose one over the other. There is a solution to this Catch-22 that the judiciary created long ago. In fact, if you have a copy of the

Federal Rules of Civil Procedure on-hand while reading this (which the Court more than likely does), then this solution is literally sitting right in front of you. That solution is... Federal Rule of Civil Procedure 35: The court-ordered mental health examination.

24.     This is the perfect compromise. This allows the Defendant to have knowledge of Plaintiff's medical condition without treading on Plaintiff's right to medical privacy. Using this, the Defendant can fully investigate Plaintiff's medical condition (so long as they restrict their investigations only to what is directly relevant to the case) without any issue. Meanwhile, Plaintiff will not have to worry about his medical privacy, since Plaintiff will go into that examination knowing full well that there will be no such privilege in the first place, and everything he says and does at this examination will be said and done with that full knowledge in mind.

25.     Since either party can request a mental examination under Rule 35, Plaintiff requests one here. However, this request is subject to the following conditions:

   (a)     Plaintiff cannot suffer any out-of-pocket expenses for this examination, including transportation, lodging, and a reasonable food allowance. This condition can be satisfied by...
      i.      the Defendant paying these expenses,
      ii.     the *court* paying these expenses,
      iii.    Plaintiff's adult medicaid insurance paying these expenses, or
      iv.     any combination of the above.

   (b)     If transportation is provided by any government entity (including the County and the Court), it cannot be in any vehicle that is immediately recognizable to the common citizen as being a government vehicle. This includes, but is not limited to, police squad cars or any vehicle with the phrase "inmate transport," or any similar phrase, affixed to it. Nor can the driver be dressed in any attire, the donning of which would cause a common citizen to instantly recognize him as a government official (his badge can simply be kept hidden). This condition is made so that it does not appear to Plaintiff's neighbors that he is being arrested.

   (c)     The doctor must either...
      i.      Be appointed by the Court, or
      ii.     Prove that he is impartial and has not agreed with the County beforehand to give a report favorable to them. This must be proven by something other than the doctor's word

(after all, if he is paid to lie on the report, how do we know he hasn't been paid to lie about being paid to lie?).

(d)     The knowledge of Plaintiff's medical condition which the doctor obtains must come entirely from the examination. No inquiry into Plaintiff's additional medical records, whatsoever, should be allowed (othewise, that defeats the whole purpose of using this as a means of keeping his general medical records private).

(e)     Plaintiff cannot even so much as *feel* harassed or badgered on his way to, during, or on his way hom from, the examination. Although Plaintiff will not insist on having "sole discretion" over whether or not this condition has been violated (he knows that the Defendant would never trust him with that), the Defendant holds burden of proving that Plaintiff engaged in an abuse of discretion.

(f)     If any violation of these conditions is even *attempted* – regardless of success or failure, and no matter how petty or slight the attempted violation is – then …
  i.     the medical examination is immediately stopped,
  ii.    Plaintiff is immediately taken home at the expense of the one furnishing the transportation (subject to conditions a and b),
  iii.   the information obtained from what medical examination did ensue must be burned within 24 hours,
  iv.    the information becomes privileged, and
  v.     it is decreed by the Court that Plaintiff (A) has Asperger Syndrome, and (B) has post-traumatic stress disorder that is worth $1,000,000 in mental anguish damages, the same as if the medical examination had gone through to its completion.

(g)     If Condition (f) is not followed, the Defendants are immediately disqualified and a default judgment in rendered against them in this case.

26.     These conditions may seem harsh, but they are necessary to protect Plaintiff from undue financial burden, to protect his right ot not be badgered, and to protect his reputation in the neighborhood (and if you don't have a right to protect your reputation, why is defamation is a legally cognizable tort?). Conditions (f) and (g) seem harsh, but they are designed to ensure that no one violate the terms, and if they see fit to violate them, *they* are the ones who suffer for the violation, not Plaintiff.

27.     If those conditions are met, Plaintiff will not only attend a mental evaluation pursuant to FRCP 35, but will do so enthusiastically! After all, as previously mentioned, Plaintiff believes that this evaluation will cause him to be diagnosed with Post-Traumatic Stress Disorder, and if he

gets diagnosed with that, his attempts to obtain millions of dollars in damages for Jones' conduct is that much easier.

28.    This way, the Defendant can have its investigation into Plaintiff's medical condition, while still keeping Plaintiff's right to medical privacy fully intact. There is no need to choose between the two.

29.    Indeed, the Defendant's failure to realize this scenario simply adds further evidence to Plaintiff's claim that the Defendant did not make reasonable attempts to resolve the dispute without court action.

### Conclusion

30.    In conclusion, let's recap the points.

(a)    The failure to attempt to resolve the dispute without court action is unchallenged, and therefore, Plaintiff is entitled to prevail on the matter. The Defendant's motion should be denied without prejudice until they follow through with this obligation.

(b)    The Defendants complain that Plaintiff never provided documentation of his Asperger Syndrome, despite acknowledging that it is discoverable. Plaintiff would do so if he were provided a form, and has stated as such in the past.

(c)    Plaintiff's mental injuries are, indeed, axiomatic. It is the mental anguish itself, not any diagnosis of any traumatizing illness, that Plaintiff is entitled to recover from.

(d)    It is exclusively the realm of the jury to decide if the Defendants have wronged Plaintiff or not, and if so, whether Plaintiff suffered injuries. ONLY THE JURY!

(e)    Even to the extent that medical records could *assist* in determining an injury, the records requested are still overly broad, as it still requests *each and every single solitary* medical record from 2009 to the present.

(f)     A mental examination is the procedure the Defendants *should* be using in order to investigate Plaintiff's medical condition.

31.     Wherefore, premises considered, Plaintiff respectfully requests that the Magistrate Judge's Order compelling disclosure of privileged medical records be overridden.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St
APT D
Harrison, AR 72501

U.S. District Court
35 E. Mountain St
Room 510
Fayetteville, AR 72701