U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
AUG 2 2 2013
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                  PLAINTIFF

VS.                      CASE NO. 12-3022

BOONE COUNTY, AR                                    DEFENDANTS

## BRIEF IN SUPPORT OF MOTION TO DISQUALIFY MAGISTRATE JUDGE

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of his Motion to Disqualify Magistrate Judge.

### BACKGROUND

1. This Court has previously denied a motion to disqualify the Magistrate Judge, on the grounds that there was insufficient evidence of bias.

2. In recent weeks, the Magistrate Judge has issued orders stating the following:

    (a) Despite the Defendants not making reasonable attempts to resolve the discovery dispute without Court action, he would nonetheless proceed with disposing of the issue on the merits.

    (b) The mere fact that Plaintiff has filed an ADA lawsuit has placed his *entire* medical condition at issue. Plaintiff gets no medical privacy, for no other reason than, he has filed an ADA lawsuit.

    (c) Plaintiff's discovery requests are without merit, and there is no need for the Defendants to contact anyone in order to obtain the information requested.

3. Additionally, the Magistrate Judge issued a Report & Recommendation for Plaintiff's Motions for Partial Summary Judgment, where he...

    (a) Tried facts which were in genuine dispute, and

    (b) Held that the County had a penological interest over Plaintiff, in violation of the

precedent of Bell v. Wolfish, 441 US 520 (1979).

4. Furthermore, the Magistrate Judge only issued these rulings after an entire year, and only upon the Plaintiff filing a Petition for Writ of Mandamus to move the case forward. This is a consistent problem with the Magistrate Judge. Perhaps Plaintiff filed the Mandamus petition at exactly the same time the Magistrate Judge had completed his investigation ... except that this has happened three times in the past two years alone.

## APPLICABLE LAW

5. First of all, let's nip one thing in the bud right here: Plaintiff does not have to necessarily "prove" vindictiveness on the part of the Magistrate Judge, the same way he has to "prove," in a discrimination case, that the Defendant's conduct was motivated by a discriminatory or retaliatory animus. Instead, the mere *likelihood* of vindictiveness is enough to obtain relief. See United States v. Goodwin, 457 US 368, 373 (1982):

> "Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal
>
> right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however — which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct — the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists."

6. On top of that, keep in mind that a judge is supposed to not only avoid impropriety, but also the mere *appearance* of impropriety, at all times, even in his personal life. See Code of Conduct for United States Judges, Canon 2. This means that, even if the Magistrate Judge could provide a legitimate explanation for his conduct, the mere fact that an explanation is needed means that no explanation could ever possibly suffice.

7. For these reasons, as long as the Magistrate Judge's actions even so much as yield the possibility of vindictiveness, it is not necessary for Plaintiff to prove that he is, indeed,

vindictive.

## EXAMPLES

8. The following examples demonstrate that the Magistrate Judge is demonstrating a bias.

### Example #1: The pattern of procrastination

9. The Magistrate Judge always takes *forever* to rule on even the simplest of motions. Currently, Plaintiff has an *in forma pauperis* application which was filed on July 3 of this year, and is still awaiting a ruling. It is only an *in forma pauperis* application; how is that complicated?

10. Then there were the motions to compel discovery and the motions for partial summary judgment. These motions sat on the docket for AN ENTIRE YEAR before the Magistrate Judge issued an opinion on them. He only did so when Plaintiff filed a Petition for Writ of Mandamus to force the case forward.

11. Now, you could make the argument that he completed his year-long investigation of those motions at *exactly* the same time Plaintiff *just happened* to run out of patience and file a Petition for Writ of Mandamus. However, this would only be believable if this happened only once or twice. Throughout multiple cases, this has actually happened *three times*! The incidents, and the case numbers in the 8th Circuit where the Petitions for Writs of Mandamus were filed, are set forth in the following table:

| # | Incident of procrastination | Mandamus 8th Cir. Case No. |
|---|---|---|
| 3 | The Motions for Partial Summary Judgment and to Compel Discovery in this case. | Case No. 13-2677 |
| 2 | Getting a ruling on the *in forma pauperis* application in this case | Case No. 12-1796 |
| 1 | Getting a ruling on the *in forma pauperis* application in the case of Stebbins v. Legal Aid of Arkansas | Case No. 11-2950 |

12. This shows that it is not mere coincidence that Plaintiff's Petition was filed at exactly the same time that the investigation was finished; this shows that there is a clear *pattern* to Marchewski's conduct (or lack thereof).

13. Then, there are dozens of incidents where the Magistrate Judge took literally months to rule on motions, just that the Plaintiff never sought mandamus relief. For example, in Plaintiff's cases against Harp & Associates, as well as Legal Aid of Arkansas, the Magistrate Judge waited until the entire discovery period was over with before he ruled on any motions to compel discovery, meaning that, if discovery were compelled, Plaintiff would have no opportunity to make follow-up discovery based on the information he received.

14. Therefore, with all of these incidents and more, it is clear that the Magistrate Judge has demonstrated a pattern of dragging his rulings out for as long as possible, simply to prejudice Plaintiff.

### Example #2: Ignoring his lack of jurisdiction

15. Despite the Defendants not making reasonable attempts to resolve the discovery dispute without Court action, the Magistrate Judge would nonetheless proceed with disposing of the issue on the merits.

16. Simply put, if the motion is not properly before the Court, he has no jurisdiction to consider it. His decision to consider it anyway simply shows that he was looking for some excuse to force Plaintiff to spill all his deepest and most personal medical secrets, just for the sake of making Plaintiff not want to file any more lawsuits. Speaking of which...

### Example #3: ADA lawsuit = no medical privacy

17. You know, for someone who tries to justify his procrastination by pointing out how "complex" the issues are which Plaintiff presents to him, he certainly does not seem to mind

stripping the issue of medical privacy down to its barest of bones.

18. According to him, Plaintiff should be forced to provide 100% of his medical records, simply because he has filed an ADA lawsuit. In their Answer to Plaintiff's Objection to that order, the Defendants pointed out a variety of issues, but none of these issues were considered by the Magistrate Judge. His logic was as simple as logic could possibly get: ADA lawsuit = no medical privacy, whatso f***ing ever. Plaintiff's objection to this order was made because of the Magistrate Judge's crude logic that the mere filing of an ADA lawsuit automatically caused you to lose your right to medical privacy in all respects. As was stated in the Objection:

> "If the Magistrate Judge's reasoning were allowed to prevail, this would effectively create a dilemma for all future persons who feel they have had their rights under the Americans with Disabilities Act violated. If they filed a lawsuit pursuant to it, then win loose or draw, they would automatically forfeit their right to medical privacy altogether, not just to the extent that it is relevant to their ADA discrimination claim. They would subsequently become discouraged from filing their suit due to the consequences thereof. Even if they are ultimately victorious, this victory would come at a terrible price, since the person's deepest, most embarrassing medical secrets (the things that he only told to his doctor because he was statutorily guaranteed secrecy) would then be on public record for everyone in the whole wide world to see!"

19. So, this just begs the question of ... why did the Magistrate Judge think that this completely ludicrous logic was legally sound? How does he even *arguably* justify his decision to force Plaintiff to disclose ALL his medical records? Sure, the Defendant has provided some additional arguments, but they did not provide them in the Motion to Compel when the Magistrate Judge was considering it; that means that the only way he could claim that he was acting on those arguments was if he had unlawful *ex parte* communications with the Defense Counsel, which would give grounds for *automatic* disqualification.

### Example #4: Jury function usurpation

20. In his Report & Recommendation on the Motions for Partial Summary Judgment, the

Magistrate Judge issued the following findings of fact:

 (a) The Jail Guards' failure to allow Plaintiff to bond when he had the chance was unintentional.

 (b) Forced labor is therapeutic to the person who is forced to do it against his will.

21. However, none of these facts were even remotely close to being "not genuinely disputed." Even if there were *some* evidence to support the finding (which there wasn't), the evidence was far from "indisputable," especially in the case of the finding that the jail guards' failure to allow Plaintiff to bond was unintentional, as the only evidence supporting such a finding was the Defendants' word.

22. When ruling on a motion for summary judgment – and, by proxy, when issuing a report & recommendation on them – the function of the court is not to try the facts; it is to determine if there exists a fact that needs to be tried. Only at a trial can a fact be tried; that is why it is called a "trial."

23. Despite this basic, fundamental concept that every lawyer – let alone every judge – is presumed to know[1], the Magistrate Judge nevertheless proceeded to make his own determination as to the credibility and weight of the evidence.

24. Now, given the fact that he obviously knows the true function of summary judgment, and cannot make the argument that he genuinely believed in the propriety of his actions, ask yourself: Why would he attempt to usurp the function of the jury, despite this clear impropriety? What does he possibly stand to gain, except that Plaintiff would be unable to present his case to a jury, meaning that the County would stand the greatest chance of having to pay up for their crimes? What other explanation can exist? This explanation can be a one in a million chance; as long as it makes sense, that explanation could satisfy Plaintiff.

---

1 Merely passing the bar exam proves that you understand the difference between summary judgment and trial.

### Example #5: The "penological interest" double standard

25. The only thing more blatant and obvious than the Magistrate Judge's attempt to usurp the function of the jury was his finding that the County's policy requiring inmates to "respect" officers served a "legitimate penological interest," despite the fact that Plaintiff was never convicted of any crime.

26. Ignoring for a minute the fact that Plaintiff was able to find the Supreme Court case of *Bell v. Wolfish*, flatly saying that a person cannot be punished except upon conviction (something you would think the Magistrate Judge would have come by at some point when he was researching the law for that matter), we are still left with the simple fact that, in the Magistrate Judge's view, Plaintiff was guilty of his crime. He saw no evidence other than the mere fact that Plaintiff had been charged, but that was enough for the Magistrate Judge to consider Plaintiff to be a criminal.

27. Now, what does that mean? Well, it means one of three things:

   (a) He has no regard for Plaintiff's due process rights. The mere accusation is enough to convict Plaintiff in his view. No trial. No chance to cross-examine witness. No chance to make an argument in his own defense. Accusation = conviction.

   (b) He does not see any need to stick only to federal law. Plaintiff was charged with a *state* crime, meaning that, even if the Magistrate Judge were to pull a "William Vanderwater" on us[2], he still would need to be a *state judge* in order for that to come even remotely close to being legitimate.

   (c) He considers anything that Boone County does to be gold. No Boone County Sheriff

---

2 What Plaintiff means by that is... he is referencing the case of Lopez v. Vanderwater, 620 F. 2d 1229 (7th Cir. 1980), where Judge William Vanderwater personally arrested Flor Lopez. At the police station, Vanderwater had arraigned Lopez, waived the right to trial by jury, convicted him instantly, and sentenced him to 240 days in prison, all without counsel or even trial. Therefore, to "pull a William Vanderwater" means to judge someone guilty just on suspicion or accusation alone.

Deputy, in his eyes, is capable of arresting an innocent man.

28. Any one of those things would warrant his disqualification.

29. However, keep in mind that this example has the phrase "double standard" in the title! Plaintiff has NOT forgotten about that part, in case you were wondering.

30. The double standard lies in the fact that the Magistrate Judge is not consistent, even with his own logic. He used the "penological interest" justification when to not use it would force him to apply strict scrutiny to the censorship rule, which would mean that Plaintiff would be entitled to victory since the jail guards would simply be required to have "tough skin." However, in the THIRD Motion for Partial Summary Judgment (the one regarding the forced labor and Plaintiff's 13th Amendment rights), he *embraced* the fact that Plaintiff was not convicted, when he felt that he could still rule in the County's favor despite this (indeed, if the County were allowed to advance a penological interest, then the 13th Amendment on its face would not protect Plaintiff, as the plain text of that amendment makes an exception for "punishment for a crime where the criminal has been duly convicted").

31. Mind you, his logic relied upon him usurping the authority of the jury as described above, but that doesn't detract from the fact that he nevertheless inconsistently applied his own logic. The only thing consistent was that Plaintiff must lose, which clearly shows that the Magistrate Judge simply has a bias against Plaintiff.

### Example #6: The discovery double standard

32. Another double standard the Magistrate Judge clearly exercised was his approach to resolving the discovery disputes.

33. He relieves the Defendants of having to provide discovery, simply because they claim it to be "burdensome" to them (despite giving no actual *facts* to substantiate that claim), but he

does not seem to care about the burden – the *lifelong* burden – that Plaintiff would experience by having to provide ALL of his medical records, regardless of relevance to this case (details as to the impropriety of that order was discussed in Example #3, but that section only discussed how the order was improper on its own; this section shows the clear double standard when the Magistrate Judge inconsistently applies his own logic.

### Example #7: The Subpoenaing delays

34. The Magistrate Judge consistently refuses to allow Plaintiff to subpoena witnesses. For example, he first states that Plaintiff should wait for a scheduling order to be issued before subpoenas can issue. However, when he changes his mind and decides that a scheduling order *won't* be issued, he decides that Plaintiff cannot depose witnesses until ONE MONTH BEFORE TRIAL.

35. A trial date has not even been set in this case yet!

36. The longer these witnesses go without being summoned, the greater their chances are of forgetting important details about the testimony Plaintiff wants them to give!

37. One of the biggest examples of this problem is Rocky Barrows, a man who heard Jones harassing Plaintiff over the intercom, but was trying to sleep at the time, meaning that he was likely not paying very close attention to what he observed, severely increasing the likelihood that he will forget something that could end up being important.

38. The Magistrate Judge's consistent refusal to issue subpoenas clearly shows his agenda to make sure that Plaintiff's case is as weak as possible, in the event that it DOES go to trial.

### CONCLUSION

39. As you can see, the Magistrate Judge is engaging in a clear pattern of bias against Plaintiff, and it needs to stop. He needs to be removed from the case, and an *impartial*

magistrate judge put in his place.

40. Wherefore, premises considered, Plaintiff requests that this motion be granted.

*David Stebbins*

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516