# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                                         PLAINTIFF

VS.                         CASE NO. 12-3022

BOONE COUNTY, AR                                         DEFENDANTS

## EXPLANATIONS FOR SECOND SET OF DISCOVERY REQUESTS

This attachment is meant to give you a laymen's terms explanation as to what is being requested in the attached discovery requests.

### Explanation for Interrogatories Nos. 2 & 3

It is not sufficient to merely state that the Jail Administrator would give the case to the Criminal Investigations Division; since the CID is also a subdivision of the Defendant, and explanation as to what happens after CID receives the case is also requested as part of this interrogatory.

Nor is it sufficient to simply state "Anyone who is found doing these things will be terminated from employment, and possibly be prosecuted with a crime." That only states the remedy; this interrogatory does not merely ask what is done when you determine that this kind of violation has occurred, but rather, how does the Defendant determine whether or not such a violation has occurred? E.g. who presides over the investigation? Who decides whether or not an investigation is to be launched? What kind of criteria does he look for in deciding whether or not to launch an investigation? And once an investigation has been launched, what questions does he ask of persons who may have personal knowledge (including the respondent public official and citizen bringing the complaint)? And what kind of other evidence does he look for?

Furthermore, these interrogatories also ask about the "training and precautions." In other words, what steps are taken in the training and recruitment stages to ensure that the officers won't do these things, and what types of supervision are in place throughout employment that are designed to minimize the risk of these oaths being breached in the first place, let alone the officer being punished for them?

### Explanation for Request for Production No. 2.

"Actually used" does not necessarily mean that the officer was punished; just that the process was invoked against him. For example, there are 19 times in the USA's history when the impeachment process was "actually used" on federal judges, even though only 8 of these occasions resulted in the Judge being removed from office without resigning first. However, the innumerable times when demands for impeachment were issued from citizens to their representatives in Congress do not count towards this number, because in those cases, the impeachment process was not *actually used*.

Likewise, in this request for production, Plaintiff does not want to receive complaint from inmatess where the case was closed just on a brief review of the complaint, in a manner similar

*Exh. B*

to pre-service dismissal of a *pro se* lawsuit pursuant to 28 U.S.C. § 1915(e). Rather, to be included in your response to this request for production, cases must be opened, investigations launched, evidence gathered, people questioned, and an affirmative decision reached ("affirmative decision" means you completely and affirmatively bring closure to the case instead of simply deciding not to investigate simply because you "trust" your fellow comrades in law enforcement).

### Explanation for Request for Production No. 3

Same as in the Explanation for Request for Production No. 2. Just take that explanation and apply it here, except instead of "3 random cases per year for the past five years," you instead give the most recent ten cases, regardless of year.

There is no time frame as to how far back you can go before you find your tenth most recent case. For example, if I were to request the records from Congress of the ten most recent times when the impeachment process was used against a federal judge, the tenth most recent one would be the case of Robert W. Archbald, who faced impeachment way back in the year 1912! Likewise, if you have to go all the way back to when the processes spoken of in your answer to Interrogatory Nos. 2 & 3 were first created, you do that.

### Explanation for Interrogatory No. 4

Although I bear the burden of proof, here, that does not mean that you should not provide any proof of your own. Remember, my testimony alone is enough to obtain victory, should the jury chose to believe me, at which point, the burden of proof will shift to you. Expecting that to not happen, when there are millions of dollars at stake, is the epitome of "putting all your eggs in one basket."

However, you cannot introduce evidence at trial unless you first disclose it during discovery. This interrogatory gives you the opportunity to disclose this evidence.

### Explanation of Interrogatory No. 5

During Plaintiff's second tenure in jail, Plaintiff filed a complaint against the jail nurse. Plaintiff mentioned Jason Jones' vendetta against Plaintiff and referenced it in his grievance against the nurse. When responding to the grievance, Jason Day gave, among other things, the following statement: "Your claiming that Officer Jones had a vendetta against you is unfounded."

Notice, he did not simply claim that it was *unlikely*, or that it was *unproven*; no, he went the full hundred yards and stated, with absolute certainty, that the conduct complained about in this lawsuit absolutely, positively, 100% ***did not happen***! In other words, he appears to be basing his statement on personal knowledge, not just the fact that Jones denied it, and he just believed Jones' word over mine.

This Interrogatory asks… on what ***PERSONAL KNOWLEDGE*** did Jason Day base his claim that my claim was unfounded?

Remember, PERSONAL KNOWLEDGE!!!