U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
NOV 04 2013
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS**

**DAVID STEBBINS** **PLAINTIFF**

**VS.** **CASE NO. 12-3022**

**BOONE COUNTY, AR** **DEFENDANTS**

**PETITION FOR SUBPOENAS *DUCES TECUM* AND MOTION FOR ADMONISHMENTS TO UNCOOPERATIVE WITNESSES**

1. Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Petition for the Court to issue subpoenas *duces tecum* to some witnesses who possess documents relevant to this case, as well as a motion for the Court to admonish several uncooperative witnesses, and to order them – pursuant to the simultaneously-filed Petition for Subpoena *Duces Tecum* – to provide written testimony answering under oath all of the questions Plaintiff wishes for them to answer.

2. Attached to this motion, the Court will find the following Exhibits.

(a) **Exhibit A**: An affidavit which was submitted to John Edgmon in connection with Plaintiff's disorderly conduct case.

(b) **Exhibit B-1**: A witness affidavit which was submitted to Jon Shatwell in connection with this case.

(c) **Exhibit B-2**: Evidence that Shatwell currently has an active appeal of his homicide conviction.

(d) **Exhibit C-1**: A witness affidavit which Plaintiff submitted to Ricky Mathis in connection with this case.

(e) **Exhibit C-2**: A transcript of a news interview between Sean Hannity and former professional wrestling personality, Debra Marshall, which documents the wrestling business'

complete disregard for individual workers' rights and whistleblower protection laws.

(f) **Exhibit D-1**: A witness affidavit submitted to Rita Stebbins which was officially under the malicious prosecution lawsuit Plaintiff has filed against her husband, but provides useful testimony here as well, as it documents David D. Stebbins' proclamation of involvement in this conspiracy (particularly Paragraph

(g) **Exhibit D-2**: Rita Stebbins' refusal to sign the affidavit, not because it was untrue, but for no other reason than, and attorney advised her not to … an attorney who just as easily could have advised against such an action simply because he knew it would entitle Plaintiff to victory in both this case and that one.

**SUBPOENAS *DUCES TECUM***

3. When upholding the Magistrate Judge's order denying Plaintiff's Petition for Issuance of Subpoenas, Judge Holmes acknowledged that the Petition was only denied because it was trial-related and not discovery-related. The implication was that, if the subpoenas were discovery-related, the Court would issue them straight away.

4. With that said, the following witnesses have documents which will be useful to proving Plaintiff's case. As a result, they should be ordered to provide these documents with all due speed.

(a) **David D. Stebbins** (located at 8527 Hopewell Rd, Harrison, AR 72601) should be ordered to produce all of the email conversations that he had – both over regular email and on facebook – with Dale Beavers. This man asserts – in his own case where Plaintiff is suing him for malicious prosecution – that there are no email conversations which are about Plaintiff. However, this is a lie and Plaintiff can prove that if he has to, but he prefers to withhold this evidence and give the Defendant the opportunity to comply with this subpoena

completely. Plaintiff is convinced that, if this man provides every single email, it would definitely show him and Dale Beavers conspiring to have Plaintiff arrested, thus instantly entitling Plaintiff to victory in this case. This is *why* this man is so reluctant to disclose that information.

(b) **Patricia Virnig** (located at 132 N Willow St, Harrison, AR 72601) should be ordered to provide the audio recordings which were submitted to her for the aforementioned disorderly conduct case.

(c) **Wesley Bradford** (located at 112 E Rush Ave., Harrison, AR 72601) should be ordered to provide the full file for Plaintiff's criminal case, including, but not limited to, the arrest report and all plea bargains which were offered to Plaintiff (whether they were accepted or not).

(d) **Both Rabekah Kennedy *and* Wesley Bradford** (former of which is located at 201 N. Main St., 3rd Floor, Harrison, AR 72601) should be jointly ordered to produce every single email and physical letter between them concerning Plaintiff's domestic battery case in the Boone County Circuit Court.

(e) **Both Rabekah Kennedy *and* Patricia Virnig** should be jointly ordered to produce every single email and physical letter between them concerning Plaintiff's disorderly conduct case in the Boone County District Court.

(f) **Relenn McBee**, Court Reporter for judge Gordon Webb. She can be located at 100 N. Main St., Harrison, AR 72601. She should be ordered to produce the audio files of all hearings in Case No. CR2011-324-4 (which was Plaintiff's felony case). This is axiomatically relevant to the instant case, since it will clearly show a vendetta against Plaintiff from Wes Bradford, as well confessions on Bradford's part that said vendetta was

caused by Plaintiff's litigation practices. At that point, all Plaintiff would need to prove was that this vendetta was the primary cause of Plaintiff's charges in the first place.

5. Furthermore, this filing also contains a Motion for Admonishment. All of the witnesses contained in that motion should be ordered to provide written testimony regarding the themes contained in the attached affidavits. Even if the affidavits provided for them are not 100% what they wish to testify about (e.g. John Edgmon may refuse to admit that he participated in the harassment), they should prepare their own affidavits discussing every theme contained in those affidavits.

## ADMONISHMENT OF UNCOOPERATIVE WITNESSES

6. On different dates, Plaintiff submitted the attached affidavits to their corresponding witnesses. Plaintiff's hope was that, if he could obtain written affidavits of these people, he could obtain their testimony easier and cheaper than if he had to take their depositions. Furthermore, the estimated direct examination time given in the simultaneously-filed Petition for Issuance of Subpoenas would be heavily reduced if these affidavits were signed. The *ideal* means of obtaining these goals would indeed be depositions, but Plaintiff cannot currently afford that, and this is better than nothing.

7. However, of all the witnesses who had affidavits submitted to them, with the sole exception of a man by the name of Morris Davis, had refused to sign them. With the exception of Rita Stebbins (who flatly told Plaintiff the reason for her refsual), Plaintiff is only speculating as to why these affidavits were refused. However, he does have a few theories regarding each witness.

8. In this section of the motion, Plaintiff will address each witness's refusal to sign the affidavits and suggest sanctions which the Court can threaten the witnesses with if they persist in

their lack of cooperation.

9. Even if the Court will not demand that the witnesses issue affidavits for their testimonies, the Court should nevertheless issue these admonishments for their testimony at jury trial.

**Rita Stebbins should nevertheless be ordered to testify.**

10. Rita Stebbins has flatly explained why she refuses to sign that affidavit. See Exhibit D-2. However, simply because she was "advised" by "counsel" to refrain from doing so does not provide her with an excuse to abstain. If she has testimony, she needs to give it, regardless of whether it's strategically in her best interests or not, and regardless of who it would incriminte.

11. Besides, she has some of the most valuable testimony in this entire case. She has evidence – even if she doesn't know it yet – that David D. Stebbins (pay attention to that middle initial) was a part of the conspiracy to have Plaintiff persecuted for his litigation habits. Examples which come immediately to mind are Paragraphs #5 & #11 of Exhibit D-1.

12. She is one of the few uncooperative witnesses who is not currently incarcerated. Therefore, it would be sufficient to punish her with incarceration under 18 USC § 401(3) if she refuses to testify in good faith in this case (remember Paragraph #6).

**Edgmon likely hates Plaintiff because of Plaintiff's religion.**

13. Plaintiff believes that there are two equally probable reasons John Edgmon refuses to testify on Plaintiff's behalf. The first is that he is exercising his Fifth Amendment right to not incriminate himself (which he would have done if he agreed to the final sentence of Paragraph #3). The second one is because one of Edgmon's religious beliefs is that saying the phrase "god damn" constitutes a violation of the Third Commandment; thus, Plaintiff's repeated usage of the phrase angered Edgmon to no end, eventually the point where he started threatening Plaitniff's life (a threat which he nonverbally communicated to Plaintiff by moving his thumb across his

neck).

14. If it is the latter reason, he needs to be admonished that, even if he qualifies for early release from ADC (which, according to his ADC profile, he is eligible to apply for in 2021), he would only be sent straight to federal jail under a contempt of court charge unless he provides full and complete cooperation with Plaintiff's good faith attempts to secure his testimony. He isn't required to testify in Plaintiff's favor if he feels that Plaintiff is not telling the truth; he can testify to the exact opposite assuming he is prepared to face perjury charges if this happens[1], he only has to talk "straight" (that is, don't give cryptic messages, be unambiguous, and, at jury trial, give "straight answers" to all questions asked of him).

15. If it is the former, he should be advised that the statute of limitations for his misdemeanor harassment has passed, which means that no charges can be brought against him.

16. Whatever the reason is, he should be ordered to provide full and complete disclosure of all relevant testimony, and this Motion asks the Court to do that (Remember Paragraph #6).

**Shatwell hates Plaintiff because of a few genital jokes.**

17. Regarding Jon Shatwell, while Plaintiff is only speculating at the reason he hates Plaintiff, he knows that hatred for Plaintiff is indeed the reason Shatwell is refusing to cooperate with Plaintiff's attempts to secure his relevant testimony. Plaintiff knows this because he has previously spoken with one of the high-ranking prison officials (who Plaintiff forgets the name of) regarding Shatwell's conduct. Shatwell told this official that he "has no intention of sending him *anything*." This officer has told Plaintiff that Shatwell said it very emphatically, showing that Shatwell's refusal had more to do with his dislike for Plaintiff than it did his personal belief in the falsity of the contents of the attached affidavit.

---

[1] And it bears mentioning, here: Plaintiff does NOT need the prosecutor to charge the witness with this crime. Under the state statute of A.C.A. § 16-118-107, Plaintiff can do it himself.

18. More than likely, the reason Shatwell hates Plaintiff is because Plaintiff has previously made a few jokes about Shatwell's genitalia. Once, Plaintiff turned his head and saw Shatwell step out of the shower, and remarked that Shatwell should "Cover his shame! Mind you, there ain't a whole lot of shame to cover, but what little there is, cover it!"

19. While Shatwell may be entitled under the First Amendment to *hate* Plaintiff for this reason, it provides him no excuse for his refusal to cooperate in Plaintiff's attempts to compel witnesses on his behalf.

20. On his ADC webpage, Shatwell is not eligible to apply for parole until 2051, so losing that hardly counts as an adequate threat to coerce him into cooperating. Fortunately, he is currently appealing his homicide conviction, and that appeal is still pending. See Exhibit B-2. If the Court were to remind Shatwell that, unless he cooperates with this case, he would still b incarcerated even if his conviction were overturned, Plaintiff believes that this may be sufficient to coerce Shatwell's cooperation (Remember Paragraphs #6 and #14).

**Ricky Mathis likely fears loss of his career.**

21. Ricky Mathis likely is not refusing to cooperate with this case because he hates Plaintiff. He has previously stated that he *likes* Plaintiff. Instead, Plaintiff believes that Ricky Mathis is simply concerned for his own future in the wrestling business.

22. As you can see from a combination of Paragraph #6 of Exhibit C-1 as well as the circled portion of Exhibit C-2, the wrestling business does not give a rat's arse about whistleblower protection laws. If he snitches, he'll never wrestle another match in his life. Now that he's a criminal, there's very few other people who would give a job, which means that, more often than not, it's either wrestling or some sort of illegal jobs.

23. Plaintiff is not at all unsympathetic to Mathis' plight; however, the fact still remains that

Plaintiff has an inalienable right to compel witnesses on his behalf, and since Mathis has some of the most probative evidence of Jones' conduct in this entire case, Plaintiff would be at a severe tactical disadvantage if Mathis were allowed to refuse to testify.

24. Besides, the law provides a remedy against whistle-blower retaliation; the wrestlers' personal desire to not invoke this remedy is their choice alone, a choice Plaintiff should not unfairly be made to suffer for.

25. Therefore, the Court should warn Mathis that his early parole – and thus, his opportunity to once again become a member of society – will mean nothing if he refuses to cooperate with Plaintiff's attempts to secure his testimony... not if he is in contempt of court under 18 USC § 401(3). If he cooperates, he at least has the *opportunity* to rebuild (again, remember Paragraphs #6 and #14).

**Relief Requested**

26. For all of these reasons, Plaintiff asks the Court to ...

(a) issue subpoenas *duces tecum* to the aforementioned witnesses, attached the corresponding affidavits to the subpoenas, and ...

(b) order the aforementioned witnesses, under pain of indefinite incarceration under 18 USC § 401(3), to do one of the following:

i. Sign the attached affidavits, or ...

ii. Draft their own affidavits, if the attached affidavits are not the truth, the whole truth, and nothing but the truth. However, these drafted affidavits must address the same issues which the attached affidavits address.

27. Because Plaintiff has the inalienable right to compel witnesses on his behalf, the Court has a duty to order the witnesses so compelled to cooperate. They suffer no prejudice (or in the

case of Ricky Mathis, no prejudice that the law does not provide a remedy for) for testifying, but Plaintiff suffers prejudice if they are allowed to refuse.

28. Wherefore, premises considered, Plaintiff requests that these admonishments be granted.

So requested on this 31st day of October, 2013.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St.
APT D
Harrison, AR 72601

U. S. D
35 E.
Room S
Fayettev