# IN THE CIRCUIT COURT OF BOONE COUNTY, ARKANSAS
## CIVIL DIVISION

**DAVID A. STEBBINS**                                                             **PLAINTIFF**

**VS**                                 **CASE NO. 2012-85-4**

**DAVID D. STEBBINS**                                                     **DEFENDANT**

## AFFIDAVIT OF RITA STEBBINS

Comes now, Rita Stebbins, who hereby submits the following affidavit. I hereby certify, under penalty of perjury, that the following is, to the best of my knowledge, the truth, the whole truth, and nothing but the truth, so help me God.

1. It is my understanding that Plaintiff – my son – was previously charged with a felony for attacking my husband with a knife. These charges are currently set to be dismissed by agreement of the prosecuting attorney.

2. I did not see Plaintiff actually attack my husband, though I still believe he did it. However, for the purposes of this affidavit, I will remain nominally neutral, and only relay the facts that I know.

3. In the summer of 2011, Plaintiff's now-former landlord, Harp & Associates, LLC, had refused to renew Plaintiff's lease agreement. Plaintiff had nowhere else to go, and thus humbly begged for my husband and me to let him live with us until he could get back on his feet.

4. my husband drafted a contract for him and Plaintiff to sign. Knowing that Plaintiff had little if any bargaining power (his only other option was to literally sleep on a park bench), my husband made the terms of the contract rather harsh against Plaintiff, in an attempt to teach him a lesson for suing his parents.

5. While negotiating this contract, Plaintiff wanted to know why it was mandatory that his

*Exh. D-1*

then-pending lawsuits against my husband should be dismissed when they were already ripe for a ruling. My husband's response was simply that "It's stupid." He then volunteered the prediction "There's a good chance his case will never even be heard." I don't know why Plaintiff thinks this is relevant to anything, but again, I am merely relaying the facts.

6. The point of this contract, aside from teaching Plaintiff a lesson, was to give Plaintiff an opportunity to get back on his feet by first obtaining a vehicle and then obtaining living arrangements. To accomplish this goal, my husband and I were supposed to provide shelter, utilities, and food to Plaintiff on a week-by-week basis, without being charged for it, so that he could save his money. The contract specifically did not provide for Plaintiff to pay us money to live there. Lesson-teaching aside, we did not want his money; we wanted him to save his money so he could get back on his feet.

7. The contract stated that Plaintiff would receive full Internet access whenever my husband and I were not using it. In a previous version of the contract that was ultimately set aside in favor of the one actually signed, Plaintiff was only to receive Internet access (among other amenities) whenever my husband said he could use it, not whenever my husband and I were using it. This previous contract also forbade Plaintiff from ever suing my husband or me again, for anything, even if my husband's actions violated the most fundamental standards of human decency.

8. Plaintiff was contractually obligated to respect my husband and I. my husband and I, however, were not obligated to respect Plaintiff. As part of the lesson-teaching, my husband and I could yell at Plaintiff like military drill sergeants, and Plaintiff would just have to sit there and take it, like a military private. Though I never did this, and I know

not of any instance when my husband did this, we still had the right to. It was part of teaching Plaintiff a lesson.

9. Many of the provisions of the contract were to be interpreted at my husband's sole discretion. my husband even reserved the right to re-interpret the undefined terms of the contract to suit a new circumstance. Such discretionary interpretations include, but are not limited to, whether Plaintiff is complying with the contract, whether or not a lawsuit Plaintiff files against my husband constitutes "justifiable cause," what chores Plaintiff was to perform around the house, and whether Plaintiff was putting in sufficient effort to secure a vehicle and living arrangements.

10. I know nothing of what happened on the night of November 24, 2012, except that I overheard some arguing between Plaintiff and my husband over the phone. As such, I prefer to be left out of this case as much as possible. I understand that this is largely unavoidable, as I am the main witness as to the contract's contents (save for the parties themselves), but I would prefer to simply relay the facts thereof and then be left alone.

11. While he was incarcerated, he asked me to look up addresses for various courthouses on the Internet for me, so he could continue to prosecute his lawsuits. Once my husband learned what I was doing, he ordered me to stop doing that, since he did not think that Plaintiff deserved this accommodation.

12. My husband has a long history of domestic violence himself. Examples include …
    (a) Throwing his daughter into a bath tub and assaulting her in retaliation to her wearing hair dye and refusing rebelliously to wash it out herself.
    (b) Slapping my glasses off my face when Plaintiff was twelve years old and asked him to fix Plaintiff's video game adapter.

WRONG and unfounded | Search Mail | Search Web | stebbinsd | Profile | Go | Sign Out | Home

### RE: Mom, can you at least do this?

Sunday, July 1, 2012 1:13 AM

From: "Rita Stebbins" <rita_stebbins@hotmail.com>
To: "David Stebbins" <stebbinsd@yahoo.com>

first of all your accusations toward your father are WRONG and unfounded. next I will not sign that affidavit on advice of legal counsel. as for your question --
i refuse to answer because of the avoidance of certain bits of information in your statements (yes your statements -- not mine) . i will try to take you to the store on monday and we can try to talk then, or if i get some rest in the morn ill try to write up something

Date: Sat, 30 Jun 2012 16:26:35 -0700
From: stebbinsd@yahoo.com
Subject: Mom, can you at least do this?
To: rita_stebbins@hotmail.com

Can you at least tell me this:

Over email (because, you know I like to have written records of these things), can you just casually confirm to me that the affidavit I asked you to sign was pretty much accurate? That there at least wasn't anything in that affidavit that was patently false? Can you at least agree to that?

Again, here's the affidavit that I originally wanted you to sign. Without actually signing it, can you agree that there are no blatant *lies* in that affidavit?

Sincerely,
David

Exh. D-2