

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS

**DAVID STEBBINS**                                               **PLAINTIFF**

VS.                         **CASE NO. 12-3022**

**BOONE COUNTY, AR**                                    **DEFENDANTS**

## OBJECTIONS IN PART TO MAGISTRATE JUDGE'S ORDER AND EMERGENCY MOTION FOR STAY OF PROCEEDINGS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Rule 72(a) Objections to the Magistrate Judge's Order, to the extent that he denied Plaintiff's Motion for Sanctions, denied Plaintiff's Motion for Subpoena *Duces Tecum*, and declined to issue subpoenas for various witnesses who have invaluable testimony in Plaintiff's case.

### EMERGENCY MOTION FOR STAY OF PROCEEDINGS

1. Because time is of the essence, Plaintiff asks Judge Holmes to order (perhaps in a text-only order) to stay the evidence hearing, as well as the rapidly-approaching deadline to submit exhibits, until this objection can be sorted out. Otherwise, there is no point in raising the objection.

### RULE 72(a) OBJECTIONS

2. For the reasons set forth below, the Magistrate Judge's decision should be overruled.

#### Motion to Compel Discovery

3. Plaintiff's primary objections are to the Magistrate Judge refusal to compel a straight answer to Request for Production No. 3 and Interrogatory No. 4.

4. In response to Request for Production No. 3, the Magistrate Judge said the following

> "Even referring to Plaintiff's explanation of request for production three (Doc. 110-2), it is not clear if Plaintiff is asking for the ten most recent cases where an inmate submitted grievances about a guard's conduct; whether he is seeking the ten most recent cases where an officer was found to have abused his authority; or

the ten most recent cases where an officer was disciplined as a result of the abuse of his authority."

5. First of all, this objection was never raised by the Defense, and is thus waived. The Magistrate Judge, by his own admission (affirming Plaintiff's intuition that grounds for objections must be stated with particularity and are waived if not timely raised), is not at liberty to come conjure up objections of his own.

6. Second, Plaintiff's explanation *did* make it clear what Plaintiff was asking. The Magistrate Judge gave three of what he considered to be plausible interpretations of Plaintiff's Request for Production. Two of them are ruled out when looking at the explanations attached.

7. The first paragraph of "Explanation for Request for Production No. 3" incorporates by reference the two paragraphs "Explanation for Request for Production No. 2." Thus, we turn to that for a more detailed explanation. That explanation states, in pertinent part, the following:

(a) "'Actually used' does not necessarily mean that the officer was punished; just that the process was invoked against him." This eliminates the third of Marchewski's proposed interpretations for the Production Request. We are left with only two more.

(b) When giving an example involving the impeachment of federal judges, Plaintiff explained "However, the innumerable times when demands for impeachment were issued from citizens to their representatives in Congress do not count towards this number, because in those cases, the impeachment process was not *actually used*." This eliminates the first of Marchewski's proposed interpretations for the discovery request.

(c) The second paragraph of "Explanation for Request for Production No. 2" (which, to reiterate, was incorporated by reference into "Explanation for Request for Production No. 3") further clarifies tat the first of Marchewski's interpretations should not hold.

(d) Last but not least, Plaintiff asked for the number of times the grievance procedure was

"actually invoked against" the officers. Plaintiff gave the example of federal judges being impeached, and stated that it has happened 19 times. If you know your US history, this means that this is 100% of the times that a judge has stood trial before the Senate, though less than half of them have resulting in a finding of wrongdoing. This eliminates the second of Marchewski's interpretations.

8. Thus, we have only one interpretation: The number of times an extremely thorough investigation was launched, and resulted in conclusive data that the respondent officer was either guilty or innocent. It is okay to include a case where the officer was guilty. Plaintiff merely seeks evidence that the Jail *uses* the grievance procedure given in response to Interrogatory No. 2 is *actually used*, rather than simply being designed to lull voters into a false sense of security, into merely *thinking* that the jail has everything under control.

9. This is relevant discovery, pursuant to Federal Rule of Evidence #406. Specifically, Plaintiff intends to show that the jail has a *de facto* policy of never actually enforcing its *de jure* policies unless they feel like it. This is exceptionally important in Plaintiff's case, as it would lend invaluable evidence to establish municipal liability pursuant to the precedent of *Johnson v. Douglas Co. Medical Dept.*, 725 F. 3d 825, 828 (8th Cir. 2013) (which discusses how ignoring official policies can potentially create municipal liability, as long as there is a *pattern* of ignoring the official policies).

10. Some initial evidence to this effect is provided by the affidavit (and, hopefully, depending on whether this Court affirms or overrides the Magistrate Judge's refusal to issue subpoenas, the testimony) of M. Dean Davis, heretofore attached to this Objection. Starting on Paragraph #4 and then continuing on paragraph #6[1], where this witness explained how the jail almost never

---

1 Plaintiff mistakenly got Paragraphs #4 and #5 mixed up when he typed this affidavit of Davis to sign. Swap those two paragraphs around – so that Paragraph #5 comes immediately after Paragraph #3 – and the affidavit's narrative flows a lot better.

obeys its own rules and policies. Of special note is Paragraph #4 (changed to Paragraph #5 pursuant to the footnote), which states, in pertinent part, the following:

> "They [the jail guards] will only obey the law if it is convenient for them. Any grievance procedures the jail has in place are mere phantom laws that exist solely to lull the voters into a false sense of security. The jail guards can lose their jobs – even be charged with crimes themselves – if they are caught committing any kind of misconduct, and they know that. However, they also know something else that the voters don't know: They know they're never going to *get caught* because the only time such a procedure would actually be invoked against them is if they've already fallen out of the Jail Administration's favor on a completely unrelated matter."

11. So, as you can see, even if the Magistrate Judge had the discretion to raise discovery objections *sua sponte*, this objection still fails on the merits.

12. As far as the Magistrate Judge's refusal to compel a complete response to Interrogatory No. 4 is concerned, Plaintiff simply has this to say: Plaintiff does, indeed, have the right to "100% of the evidence." Why? Because even if the Defendants have no intention of introducing it, Plaintiff still has the right to discover it himself, just in case it may be helpful to Plaintiff. ALL evidence that is relevant is discoverable.

13. For these reasons, Plaintiff's Motion to Compel Discovery should be granted in full.

### Sanctions denial

14. On Page 7 of the Magistrate Judge's Order, Marchewski stated the following:

> "The request for sanctions is denied. Although the Court has ordered Defendants to produce additional material, the Court believes the discovery disputes were at least partially due to the convoluted and argumentative requests."

15. Marchewski seems to believe that sanctions are not appropriate if the Defendant had any good faith grounds for an objection. Plaintiff has already addressed this matter in the Motion for Sanctions itself.

16. Well, at least he *thought* he did. Plaintiff had intended to file a brief in support of his

motion; however, a look at the Pacer records for this case seems to reveal that this brief, for whatever reason, was not filed.

17. However, Plaintiff does not need to produce the brief in order to point out the Magistrate Judge's error in this case: The Rules of Civil Procedure – which the Magistrate Judge already had access to, brief or no brief – already plainly refutes the Magistrate Judge's legal finding.

18. Specifically, Plaintiff is referring to Fed. R. Civ. P. 37(d)(2), which states, in terms just as certain as AR Local Rule 33.1(b) states the inadequacy of the Defendant's objections, that "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."

19. Since there is no pending motion for protective order, the Magistrate Judge is prohibited from offering any sympathy on the court's behalf for the Defendant's failure to produce the discovery responses in spite of their objections.

20. This is not an unfair requirement; the Defense controls its own destiny when deciding whether or not to file a motion in a court case. Therefore, if this Rule of Civil Procedure is invoked, the party it is invoked against has no one to blame but themselves.

21. The Magistrate Judge based his denial of sanctions entirely on this one ground. This is a classic example of "abuse of discretion:" Basing one's decision exclusively on factors that one is plainly not allowed to consider.

22. The mix-up which caused Plaintiff's brief to not get filed does not excuse the Magistrate Judge's abuse of discretion, either, because as previously set forth, the Rules of Civil Procedure already said this on Plaintiff's behalf; what is Marchewski's excuse for making *that* mistake?

23. Since the Brief was, for some reason, never filed, Plaintiff will reiterate his arguments

regarding what *type* of sanction should be issued, since there IS an excuse for the Court not having access to THAT.

24.     When sanctions are appropriate, and what *kind* of sanctions are allowed, are governed by the precedent of *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir. 1975).

25.     The precedents from the *Fox* case which are applicable in this case are as follows:

(a)     "A direct order by the court as provided in Rule 37(a) and (b) is not a prerequisite to imposition of sanctions under Rule 37(d)(2). The rule permits immediate sanctions against parties for wilful failure to comply with discovery rules." Page 993.

(b)     "Wilful failure to answer interrogatories may be the basis for a dismissal." Page 993.

(c)     "Where interrogatories are filed late out of neglect or health reasons, dismissal or a default judgment is too harsh a sanction." Page 993. In other words, as long as you don't issue dismissal or default, a finding of wilfulness or bad faith is not necessary.

(d)     "[M]any of the sanctions available under Rule 37(b) are incorporated by reference in Rule 37(d). Specifically in question here is Rule 37(b)(2)(A) which allows the court to order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Page 995 (internal quotations omitted).

(e)     "[A] Rule 37(d) sanction is improper where a written response to a request to inspect documents is made but is not satisfactory. In other words, Rule 37(d) sanctions are proper only where there has been a complete or nearly total failure of discovery." Page 995.

26.     As established above, Plaintiff must establish a total failure to respond altogether, not just an unsatisfactory response, before sanctions can be imposed pursuant to Rule 37(d) (as opposed to 37(b)). To that end, Plaintiff asserts the following:

(a) The Defendants have simply refused to give any response to Interrogatory No. 1 and Request for Production No. 3. Objections were placed to both discovery requests (objections which were both inadequate and meritless, as previously established), but as established in Paragraphs #18 – 22 in this Objection, that does not excuse sanctions.

(b) Interrogatory No. 3 has not been responded to at all. The Defendants changed the question and answered the changed question. That does not count as a response to the Interrogatory.

(c) Interrogatory No. 4, to the extent that it requests evidence to refute Plaintiff's accusations that the arrest and prosecution was based on vendetta against "Mr. Lawsuit" rather than a legitimate response to criminal conduct, has not been answered at all. The Magistrate Judge's order to the contrary is plainly inconsistent with Plaintiff's due process rights, as set forth in Paragraph #12 of this objection.

27. As you can see, for every piece of discovery the Defendants made at least some attempt (frivolous as it may be) to respond to, there are just as many that the Defendants have completely ignored. This is exactly what Rule 37(d) is designed for.

28. Therefore, this Court should issue appropriate sanctions to the Defendants for every failure to respond spoken of in Paragraph #26(a)-(c).

29. The Court should consider default. Although the *Fox* precedent makes it abundantly clear that there must be a finding of wilfulness and/or bad faith before such a sanction can be imposed, Plaintiff believes that there is substantial evidence to support such a finding.

(a) The Defendants placed vague objections that the discovery was not relevant, despite both the Federal Rules of Civil Procedure and the Local Rules stating – in terms so plain that a fifth grader could understand them – that such blanket objections are not sufficient.

(b) Despite being given over a week to correct these errors (time Plaintiff was not required to even give them, as established in Paragraph #25(a)), the Defendants' only action taken to correct these insufficient responses was ... providing Jones' and Beathky's resignation letters (without fully complying with the full discovery responses).

(c) When attempting, pursuant to his requirement under Rule 37(a), to obtain the discovery requests without court action, Plaintiff attempted for several days to obtain cooperation from the Defendants. However, on October 28, 2013, Plaintiff called Defense Counsel one last time, and the Defense Counsel confessed that he had not even *communicated* with the Boone County Jail Administrator Jason Day, not because Day was unavailable, but simply for no other reason than... he simply was too "busy" to work on this case.[2] This is a frivolous excuse; if he is too swamped to adequately defend this case, he shouldn't be working on the case; instead, he should give the case to a different attorney who isn't currently overbooked.

30. If the Court refuses to issue the sanction of default, the Court should at least consider striking portions of the pleadings.

31. With that finally taken care of, let us move on to the issue of subpoenas:

### Subpoenas *duces tecum*

32. The Magistrate Judge denied the motion for subpoenas *duces tecum*. However, the grounds for his denial were based exclusively on the Motion for Admonishments to Uncooperative Witnesses. They were two separate motions.

33. In paragraph #4 of that motion, Plaintiff asked the Court to subpoena the production of various DOCUMENTS which were of significance to this case. Of special importance was Paragraph 4(a), where he requested an email conversation that he was certain would reveal

---

2 For the record, this allegation would have been included had the Brief been successfully filed.

Plaintiff's father conspiring to have Plaintiff arrested so that he could be coerced into dismissing pro se lawsuits, thus instantly entitled Plaintiff to summary judgment on that count (even if it would not entitle Plaintiff to automatic summary judgment, it would nevertheless be useful as evidence).

34. The Magistrate Judge has completely ignored Paragraphs #3 – 5 of that motion, and as such, has committed a grave abuse of discretion which, if uncorrected, would significantly hinder Plaintiff's ability to prosecute this case.

35. Speaking of refusing to issue subpoenas despite no clear reason for doing so ...

### Refusal to subpoena key witnesses

36. The biggest example of the Magistrate Judge's abuse of discretion comes from his refusal to issue subpoenas of key witnesses for reasons that are entirely frivolous.

37. First of all, the Magistrate Judge has declined to subpoena witnesses Morris Dean Davis, Jon Shatwell, and Ricky Mathis, on the frivolous grounds that their testimonies are hearsay. Does the Magistrate Judge even know what hearsay is?!

(a) Shatwell and Davis will be directly testifying to the same thing John Edgmon will testify to. They observed the event with their ears rather than their eyes, but that does not make it any less admissible; they still directly observed it first-hand, and therefore, it is not hearsay.

(b) Now, if either Shatwell or Davis were to testify that Plaintiff was the victim of these threats, THAT would be hearsay. However, Plaintiff defers the Court to Paragraph #3 of the attached affidavit, which states, in pertinent part, "I can testify, with 100% certainty (because I heard it with my own ears) that he [Jason Jones] was making threats – at the top of his lungs to boot – to somebody in B-Pod."

(c) Ricky Mathis has evidence of Jones' *confession*! The admissibility of confessions have never been in dispute in the history of American courts! This is complete nonsense!

(d) Besides, since Jason Jones will also be testifying in this case, this clearly means that any accusations of what he did or did not say are nevertheless not hearsay.

38. Therefore, these witnesses' testimonies are 100% admissible, and the magistrate judge's declaration otherwise is clearly erroneous.

39. For the subpoenas that were requested towards Wes Bradford, Robert T. Dawson, Diana Murphy, Pasco Bowman, Raymond Gruender, Levenski Smith, Bobby Shepherd, Jane Kelly, James Loken, Polly Leimberg, Billie Christian, Gordon Webb, Fred Kirkpatrick, Beth Bryan, Doug Martin, Rabekah Kennedy, Patricia Wirnig, Van Younes, Rita Stebbins, David D. Stebbins, James E. Goldie, the Magistrate Judge simply states that the cases they were involved in are "not at issue in this case."

40. This is an extremely shallow perception of the case. What is "at issue" in this case is whether Plaintiff's arrest was made out of a conspiracy to persecute him for his *pro se* lawsuits. All of these witnesses have personal knowledge as to whether a conspiracy even exists (at which point, it becomes a matter of proving that Boone County was part of it. This is relevant evidence under Federal Rule of Evidence #401, which states that "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."

41. The Magistrate Judge claims that these matters are "not in issue in this case." They quite simply do not have to be. The definition of "relevancy" is not at all limited to the ultimate fact in dispute. In fact, because the word "materiality" had acquired that very meaning, it was deliberately excluded from use in the rules. Cotchett and Elkind, *Federal Courtroom Evidence,*

43 (2d ed. 1988). "Relevant evidence" under Rule 401 means evidence "having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." The advisory committee's comments to Rule 401 of the federal rules provides: "The kind of fact to which proof may be properly directed is any fact that is of consequence to the determination of the action. The fact to be proved may be *ultimate, intermediate, or evidentiary; so long as it is of consequence in the determination of the action.*" As Dean McCormick has so aptly phrased it: "To be relevant, evidence need only be a brick, not a wall." *McCormick on Evidence* 543 (3d ed. 1984). In sum, the majority misconstrues the meaning of "relevant."

42. This interpretation of the Rules of Evidence is backed by the Supreme Court: "It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See *New Jersey v. TLO*, 469 US 325, 345 (1985).

43. Since the existence of a conspiracy to persecute Plaintiff is a fact of consequence in this case, and whether these people know about it or not will have "any tendency" to prove or disprove it, the Plaintiff has the right to cross examine these witnesses.

44. Additionally, even if these cases are not "at issue here," they are still admissible under Fed. R. Evid. 404(b) to prove elements such as "opportunity" (e.g. whether Boone County felt, pursuant to how other cases have ruled in their favor, that they can get away with such wanton violations of peoples' rights) and, obviously, the element of "motive" (e.g. whether there even *was* a desire to persecute Plaintiff for his lawsuits in the first place., irrespective of whether the arrest was done pursuant to said desire). FRE 404(b), on its face, is *designed* for evidence of

seemingly unrelated acts. In fact, the very TITLE of that subsection is "Crimes, Wrongs, or **Other** Acts." OTHER Acts!

45.     Clearly, they do not HAVE to be "at issue here" to be admissible.

46.     As for refusing to summon Rita Stebbins, there is an additional reason she needs to be summoned that the Magistrate Judge has completely ignored: She knows that Plaintiff was diagnosed with Asperger Syndrome. Thus, she is the only source of disinterest testimony proving that Plaintiff is "disabled" under the Americans with Disabilities Act. Do you honestly believe that this is not an important element in one of Plaintiff's claims in this case?

47.     Marchewski has declined to subpoena himself because he is the "presiding magistrate judge." This, however, does not privilege him from testifying; it merely means that he should back away from the rest of the case. Sure, he *claims*, in his order, that he lacks any knowledge, but Plaintiff believes that he is lying, and that is exactly what Plaintiff has the right to cross-examine.

48.     The Magistrate Judge does not have to recuse himself for the evidenciary hearing. Plaintiff merely asks that the Magistrate Judge submit to testimony when the case finally goes to jury trial. If that is what he was referring to when he said it would be improper, then Plaintiff will revoke this portion of the objection. But ONLY IF that is what he meant.

49.     The refusal to issue subpoenas for Lynn O'Neil and Kimberly Klutts is where you can tell the Magistrate Judge simply gave up on maintaining the outward appearance of propriety. He is attempting to deprive Plaintiff of disinterested witnesses, much like with his refusal to issue subpoenas for Davis, Shatwell, and Mathis. The difference there is that he actually *pretended* like he had a legitimate reason for doing so (hearsay). Here, he is, for absolutely no reason whatsoever, attempting to put an arbitrary limit on the amount of evidence that Plaintiff is allowed to intro-

duce in support of his case!

50. The ONLY way this could even be REMOTELY legitimate is if Marchewski were only limiting Plaintiff's evidence at the evidence hearing, where he has already pledged "avoid credibility determinations, believe the Plaintiff's evidence, and draw all justifiable inferences in the Plaintiff's favor."

51. However, if this is how Judge Holmes chooses to interpret the Magistrate Judge's order, Plaintiff nevertheless asks Judge Holmes to assure Plaintiff that he will, with 100% certainty, issue subpoenas to these witnesses when the time comes for a jury trial, so that they can offer disinterested testimony to compliment Plaintiff's interested testimony. It does not take a seasoned attorney to understand why disinterested witnesses are preferred.

52. Even if Judge Holmes chooses to interpret the Magistrate Judge's denial of subpoenas as only applying to the evidence hearing, the Court should still subpoena Kimberly Klutts. The reason is because, much like Rita Stebbins, she has additional testimony to present that the Magistrate Judge completely ignored. To reiterate from the Petition itself:

> "She is Plaintiff's neighbor, and has personal knowledge of a portion of Plaintiff's litigation practices; she can testify, from personal experience, that Plaintiff's lawsuit-filing habits are 100% honorable, and in no way deserving of persecution."

53. Under the expansive definition of "relevant" as set forth in Paragraphs #40 – 42 of this Objection, this is admissible to show that the Defendant's choice to persecute Plaintiff is entirely unjustifiable from a *moral* perspective, as well as a legal one. This is relevant because it has "any tendency" to affect "a fact of consequence." The specific fact it affects is ... how much damages should the jury award Plaintiff?

## CONCLUSION

54. To wrap up this objection, let us recap the points:

(a)     The Magistrate Judge had no authority to raise objections of his own, *sua sponte*.

(b)     Request for Production No. 3 is, indeed, clear.

(c)     Plaintiff has the right to ALL relevant evidence.

(d)     The Defendant should be sanctioned because no motion for protective order has been filed.

(e)     The Magistrate is arbitrarily attempting to handicap Plaintiff's case by keeping him calling star witnesses, ignoring (not even denying, but straight-up ignoring) his subpoenas *duces tecum* which would provide Plaintiff with invaluable exhibits, and keeping Plaintiff from introducing evidence that meets the expansive definition of "relevant," and is plainly admissible under Fed. R. Evid. 404(b).

55.     Wherefore, premises considered, Plaintiff requests that (A) the proceedings be stayed until this objection is ruled on, and (B) the objections be sustained and the Magistrate Judge's orders be overturned consistent with the contents of this objection. So requested on this 17th day of January, 2014.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St
Apt D
Harrison, AR 72601

U.S. District Court
35 E. Mountain St,
Room 510
Fayetteville, AR 72701

