# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# HARRISON DIVISION

**DAVID STEBBINS**             PLAINTIFF

**VS.**          NO. 12-CV-3022

**BOONE COUNTY ARKANSAS, ET AL.**          DEFENDANTS

## AFFIDAVIT OF JASON DAY

1. My name is Jason Day and I am the Jail Administrator for the Boone County Detention Center in Harrison, Arkansas. I have been employed at the Boone County Detention Center for approximately 14 years.

2. As part of my regular duties at the Boone County Detention Center I supervise the jail staff at the Boone County Detention Center. I conducted a search of the personnel files for former jailer Jason Jones and former Sheriff's Deputy Jason Baethke, after that search and based on my knowledge as Jail Administrator for Boone County, I am not aware of any documents concerning Mr. Jones or Mr. Baethke leaving their employment with Boone County, other than the resignation letters that were previously provided.

_____
Jason Day

State of Arkansas  )
                       )
County of Boone  )

SWORN AND SUBSCRIBED before me on the 23rd day of January 23, 2014.

_____
Notary Public



LISA DAVIS
MY COMMISSION # 12301854
EXPIRES: February 5, 2023
Boone County

# SECTION 34.

## ETHICS

POLICY: Ethical behavior by employees of the Boone County Sheriff's Office is imperative in maintaining the trust and respect of the citizens within this community. Should this trust or respect ever be compromised for allegations of unethical conduct, a full scale internal investigation will be initiated and vigorously pursued, an internal investigation will serve to uncover any alleged law enforcement practices or behavior which are considered to be undesirable or to dispel any citizen speculation of its existence.

PROCEDURES:

A. Employees of the Boone County Sheriff's Office will provide courteous and professional law enforcement services to citizens within this community, being ever mindful that our primary mission is to serve mankind, and to be civil and respectful in our contacts with all persons.

B. Employees of the Boone County Sheriff's Office will remember that he/she are public servants. Our conduct, therefore, in the presence of the public shall always be in accordance with the highest degree of morality which is required of the law enforcement profession.

C. Law enforcement officers will remember that he/she are sworn to protect and serve all citizens of this community equally. Race, color, religion, age, sex, political beliefs or other personal opinions shall not interfere with the equal administration of justice to all citizens within this jurisdiction.

D. Law enforcement officers will always remember that he/she has sworn to uphold the law, abide by the law, and protect the rights of all people as afforded by the constitution of the United States and the constitution of the State of Arkansas.

E. Employees will be truthful in his/her conduct toward all persons.

F. Each employee will assume the responsibility for his/her act or omission to act.

G. Employees will not indulge in obscenity or profanity of speech or action during the performance of official duties, and will conduct his/her private life in a manner which will not bring discredit to the Boone County Sheriff's Office.

H. Employees will not intimidate, use or direct unjustifiable violence, force, or threats against any person.

I. Employees will not accept anything of apparent or prospective value from any person which may influence him/her in the performance of official duties.

J. Employees will not knowingly associate with any person(s) notoriously suspected of illegal activities, except in the performance of official duties.

K. Employees will always be neat and clean in person and dress, and while on duty shall be attired and equipped according to the nature of his/her duties and environmental conditions.

L. Employees will not use tobacco while on duty, except with discretion when not in view of the general public.

M. Employees will not consume alcoholic beverages while on duty, except during the performance of official duties.

N. Employees will not consume alcoholic beverages prior to their scheduled work time which will render him/her unfit for duty.

34.1

O. Employees will not use drugs other than over the counter medications or those prescribed by a reputable physician.

P. Employees will report to their immediate supervisor, who will document and keep a record of, any permanent or long term prescription medications he/she is taking.

Q. Employees will be respectful when addressing an officer with superior rank. The proper method of addressing a superior officer is to verbalize the officers rank prior to the officers last name, such as: Sergeant Jones or Lieutenant Smith as examples.

R. Employees will promptly obey orders received from a superior officer.
  1. An exception to this rule will apply if the order given is in violation of a policy or procedure of the Boone County Sheriff's Office or in violation of any law.
     a. If this situation should occur the subordinate officer will respectfully decline the order, bringing the violation to the attention of the superior officer.
     b. Should the superior officer insist on the subordinate carrying out the order, the subordinate will respectfully decline and immediately contact a higher ranking officer to report the incident.

S. Insubordination from any employee will not be tolerated and will be grounds for disciplinary action.

T. The Law Enforcement Code of Ethics is reproduced as a part of this policy in order to stress the importance of ethical conduct and to provide further guidance for law enforcement officers of the Boone County Sheriff's Office to follow.

### The Law Enforcement Code of Ethics

As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all men to liberty, equality and justice.

I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before god to my chosen profession------Law Enforcement.

U. Any violation of this policy is subject to disciplinary action, up to and including dismissal.

## SECTION 108

## USE OF FORCE

**POLICY:** The Boone County Sheriff's Office recognizes and respects the value and special integrity of each human life. In vesting law enforcement officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of this agency that law enforcement officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

**PURPOSE:** To provide guidelines for law enforcement officers of this agency to follow in the use of force, either deadly or non-deadly, to bring an incident under control.

**DEFINITIONS:**

A. *Deadly force:* Any use of force that is likely to cause death or serious bodily harm. For purposes of this policy deadly force will mean the discharging of a firearm toward a person. No other type of deadly force is authorized

B. *Non-deadly force:* Any use of force other than that which is considered deadly force.

**PROCEDURES:**

A. Parameters for use of deadly force:

   (1) Law enforcement officers are authorized to fire their weapons in order to:

      (a) Protect the law enforcement officer or others from what is reasonably believed to be an immediate threat of death or serious bodily harm; or

      (b) Prevent the escape of a fleeing felon whom the officer has probable cause to believe will pose a significant threat to human life should escape occur.

   (2) Before using a firearm, law enforcement officers shall identify themselves and state their intent to shoot, where feasible.

   (3) A law enforcement officer may also discharge a weapon under the following circumstances:

      (a) During range practice or competitive sporting events.

      (b) To destroy an animal that represents a threat to public safety, or as a humanitarian measure where the animal is seriously injured.

   (4) Law enforcement officers shall adhere to the following restrictions when their weapon is exhibited:

      (a) Except for maintenance or during training, law enforcement officers shall not draw or exhibit their firearm unless circumstances create reasonable cause to believe that it may be necessary to use the weapon in conformance to this policy.

      (b) Warning shots are prohibited.

      (c) Law enforcement officers shall not fire their weapons at or from a moving vehicle. An

108.1

exception to this provision will be justified under circumstances where an officer is in immediate danger of being subjected to deadly force. Example: A suspect in a moving vehicle discharges or is attempting to discharge a weapon directed at a vehicle occupied by a law enforcement officer.

(d) Firearms shall not be discharged when it appears likely that an innocent person may be injured.

B. Parameters for use of non-deadly force:

(1) Where deadly force is not authorized, officers should assess the incident, if possible, in order to determine which non-deadly technique or weapon will best bring the incident under control in a safe manner.

(2) Law enforcement officers are authorized to use non-deadly force techniques and issued equipment for resolution of incidents, as follows:

(a) To protect themselves or another from physical harm; or

(b) To restrain or subdue a resistant individual; or

(c) To bring an unlawful situation safely and effectively under control.

C. Training and qualifications:

(1) Deadly weapons:

(a) While on-and off-duty, law enforcement officers shall carry only weapons and ammunition authorized by and registered with this agency.

(b) Authorized weapons are those with which the law enforcement officer has qualified and received departmental training on proper and safe usage, and that are registered and comply with departmental specifications.

(c) This agency shall schedule regular training and qualification sessions for duty, off-duty and specialized weapons, which will be graded on a pass/fail basis.

(d) Law enforcement officers who fail to receive a passing score with their duty weapon(s) in accordance with department testing procedures shall be relieved of their police powers and immediately reassigned to non-enforcement duties.

(e) A law enforcement officer shall not be permitted to carry any weapon with which he has not been able to qualify during the most recent qualification period.

(f) A law enforcement officer who has taken extended leave or suffered an illness or injury that could affect his use of firearms ability will be required to re-qualify before returning to enforcement duties.

(2) Non-deadly force weapons and methods:

(a) A law enforcement officer is not permitted to use a non-deadly weapon unless qualified in its proficient use as determined by training procedures.

(b) The following non-deadly weapons are authorized:

108.2

(1) Police Baton – A police baton may be used when considerable force is necessary. The baton will permit an officer to defend himself or others in situations where the use of firearms may not be necessary or justified. Officers must use discretion in determining whether or not to use this equipment. Generally, if verbal persuasion and other means of force have failed to effectively control an individual and backup is not readily available, the use of the baton is justified to gain control.

(2) Side Handle Baton – Officers who have not completed the certified training are not authorized to carry the side handle baton. The same rules apply to this piece of equipment as the regular baton listed above.

(3) Flashlights – In the event it becomes necessary to use a flashlight as a defensive weapon, officers will use it in the same manner as the baton.

* Note: In use of the above non-lethal weapons, suspects should not be struck in the head, neck, groin area, joints or kidneys.

(4) OC Pepper Mace – Generally OC Pepper Mace spray will only be used when a danger of physical injury to the officer or other person(s) is reasonably apparent and the officer is unable to verbally control an offender.

* Note: In use of OC Pepper Mace, officers must successfully complete a training course approved by the department on the use of OC Pepper Mace prior to carrying or deploying the agent. This course must include the officer being exposed to the effects of the OC agents, and guidelines for proper cleanup/treatment of persons exposed, including bystanders, officers and suspects.

(5) Weaponless Defense/Arrest Tactics – Officers may use defense tactics in which departmental training has been given to control or arrest uncooperative suspects.

(6) Canine – The use of a law enforcement canine to search for or apprehend suspects will be considered a use of force under this policy when the canine inflicts injury.

D. Escalating levels of force: For the purposes of this policy use of force, if possible, will begin and escalate to different levels in the following sequence:

1. (Level 1): Verbal Persuasion

2. (Level 2): Minor physical force (taking a suspect/prisoner by the arm as a physical type of persuasion)

3. (Level 3): OC Pepper Spray (use ONLY if resistance is encountered in step 2 above)

4. (Level 4): Defensive tactics (use of defensive tactics at this point will often result in the suspect/prisoner being subdued, and will include placing hands behind the back for handcuffing)

5. (Level 5): Use of baton, PR-24, halsatan or flashlight.

6. (Level 6): Deadly force; Deadly force as used in this policy shall mean the discharging of a firearm toward a person. Justification for the use of deadly physical force by an officer is restricted to the following:

108.3

a. When necessary to defend the officer or another person from death or serious bodily injury, and all other means of defense have failed or would be inadequate under the circumstances.

b. To effect the arrest of a person attempting to escape from a violent felony, and then ONLY if the officer reasonably believes the fleeing felon poses a significant threat to human life should escape occur.

E. It is impossible to control at which level of force any particular use of force incident will begin or how quickly and in what steps it might escalate. An incident might begin at "level # 4" for instance instead of level #1. As another example, a use of force incident might begin at level # 1, verbal persuasion, and escalate immediately to level # 6, deadly force.

F. The most important thing to remember concerning the use of force is that an officer must use judgment each time a use of force incident occurs, and an officer must base this judgment on training along with the circumstances associated with the incident to make a decision on what type of force to use. An officer must always remember that whatever the circumstances are, only the minimum amount of force necessary will be used to preserve the peace, prevent the commission of offenses, effect lawful arrests' or defend persons or property.

G. Reporting uses of force:

  (1) A written "INCIDENT" report prepared according to departmental procedures will be required in the following situations:

  (a) When a firearm is discharged outside the firing range
  
  (b) When a use of force results in death or injury.
  
  (c) When a non-lethal weapon is used against a person.
  
  (d) Anytime physical force is used against a person to affect an arrest.

  NOTE: The use of handcuffs, although considered to be a use of force, will be excluded from the report requirement.

  (2) A use of force report will outline the circumstances surrounding the use of force, the specific degree, amount and type of force employed and the results of the use of force. (who, what, when, where, why and how)

  (3) A supervisor will be immediately summoned to the scene and will comply with investigative procedures as required by the department in the following situations:

  (a) When a firearm is discharged outside of the firing range.
  
  (b) When a use of force results in death or serious injury.
  
  (c) When a subject complains that an injury has been inflicted.

II. Agency response:

  (1) Deadly force incident

108.4

# U of A
## UNIVERSITY OF ARKANSAS SYSTEM
## CRIMINAL JUSTICE INSTITUTE

This is to certify that

# Jason C. Baethke

has successfully completed the 6 hour course

## Use of Force

September 14, 2011



_____
Director
Criminal Justice Institute

_____
Education and Training Center Coordinator
Criminal Justice Institute