

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                        PLAINTIFF

VS.                                CASE NO. 12-3022

BOONE COUNTY, AR                                           DEFENDANTS

### SUPPLEMENT TO EVIDENCE HEARING CLOSING ARGUMENTS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following supplement to the closing arguments provided at the evidence hearing.

1. On April 22-23, 2014, this Court conducted an evidence hearing in the above-styled action to determine if there was sufficient dispute of fact to warrant a jury trial.

2. During the closing arguments, defense counsel raised – for the first time – Plaintiff's alleged failure to exhaust administrative remedies.

3. Since Plaintiff was only at that point ever advised of their intention to use such a defense, he had no chance to do legal research on the matter. Now that he has had such an opportunity, he has discovered the case of *Miller v. Norris*, 247 F. 3d 736 (8th Cir. 2001), which states, in pertinent part, the following:

> "The statute provides that '[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," *see* § 1997e(a). This provision does not require exhaustion of *all* remedies; it requires the exhaustion of 'such administrative remedies as are available.' Although the PLRA does not provide a definition, the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable ... accessible.'
>
> We believe that a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a), and that Mr. Miller's allegations raise an inference that he was prevented from utilizing the prison's administrative remedies."

4. You can see how this precedent is directly applicable to this case.

(a) The Defendants have offered the testimony of interested witnesses to testify that grievances could be appealed beyond Jason Day, but no actual *evidence* beyond their interested testimony (which, according to summary judgment case law, is automatically subject to genuine dispute) to prove that such a remedy existed

(b) The Defendants have offered NO evidence whatsoever – not even interested testimony – to show that the inmates were ever given even the slightest notice that such a remedy existed. A remedy that inmates cannot exercise for lack of knowledge the remedy's very existence is not an "available" remedy as defined by the *Miller* precedent.

(c) Indeed, there was plenty of evidence suggesting that the inmates were in fact mislead into believing that Jason Day was the final authority when it came to grievances regarding officer misconduct. This evidence includes, but is not limited to ...

    i. The grievance forms themselves, which state that, if the inmate does not like the decision issued, the decision may be appealed to the Jail Administrator. However, these grievances give no indication of any appellate procedure beyond that point.

    ii. The testimony of disintered witness Morris Davis, who testifiest hat the Arkansas Department of Corrections is "a thousand times better" than the Defendant's county jail, "because they actually have rules and procedures that they're required to follow." Notice that Davis did not simply state that the ADC guards *actually follow* the rules and procedures; he is saying that ADC actually *has them* From this disinterested testimony, a reasonable jury could draw the inference that, inside the Defendant's county jail, rules and procedures are so frequently ignored that some inmates genuinely doubt whether they even exist, or if they're just a myth.

(d) Also coming from the testimony of disinterested witness Morris Davis, and matching,

identically, the testimony coming directly from Plaintiff, show evidence that the jail guards would often "ball up the grievances and throw them in the trash," which falls squarely within the example given by the *Miller* precedent of "a remedy that prison officials prevent a prisoner from utilizing."

(e) Furthermore, Plaintiff made perfectly clear that the jail guards would cut him off, not let him get a word in edge wise, and not give him the chance to grieve. Again, prevention of utilization. The Court *must* believe this testimony (as the Court itself enumerated numerous times), and if the jury chooses to believe Plaintiff, then it is established that there are plainly no administrative remedies to be exhausted.

5. It is important to note that, because the disinterested Davis is testifying identically to Plaintiff, a jury would be even more likely to believe the two witnesses. Many defense witnesses could easily collaborate with each other about what to say at trial, without there being any proof of the collaboration. However, Davis is incacerated, meaning all incoming and outgoing communication with that inmate is monitored by ADC; this means that it is quite impossible for Plaintiff to commit the crime of subornation of perjury (18 U.S.C. § 1622) without there being plenty of evidence of the crime.

6. For this reason, Plaintiff maintains that the proper exhaustion of administrative remedies (as well as precisely what administrative remedies even existed) is in genuine dispute, and a jury trial is needed to resolve these disputes. So requested on this, the 19th day of May, 2014.

_David Stebbins_
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

David Stebbins
123 W. Ridge St
APT D
Harrison, AR 72601

U.S. District Court
35 E. Mountain St.
Room 510
Fayetteville, AR 72701