IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                                              PLAINTIFF

VS.                                     CASE NO. 12-3022

BOONE COUNTY, AR                                                     DEFENDANTS

## MOTION FOR RECONSIDERATION

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for Reconsideration in the above-styled action.

This is not a waiver of the right to appeal. Rather, this motion stays the time limit to file an appeal; see Federal Rule of Civil Procedure 4(a)(4).

On March 30, 2015, this Court entered an order dismissing Plaintiff's case with prejudice, on the following grounds:

1. Plaintiff had not shown any evidence of an official or unofficial policy or custom of arresting people without probable cause.

2. Plaintiff offered nothing more than his speculation as to the "real" reason he was arrested.

3. Plaintiff was convicted of his offense, and his conviction was never set aside.

4. Plaintiff has not plead, in his Complaint, sufficient facts upon which a jury could find that there was any official or unofficial policy or custom of jail guards abusing inmates.

5. It is disputed whether Asperger Syndrome should even be considered a disability.

6. Plaintiff requested the reasonable accommodation of being allowed to break rules, and that was not a "reasonable" accommodation, as a matter of law.

7. The fact that the alleged victim was injured automatically creates probable cause, even if the arresting officer knew the injuries were self-inflicted.

This Court made several critical errors in its assessment. Plaintiff did indeed present

plenty of evidence (evidence which was corroborated in Plaintiff's complaint) of a custom of ignoring officers' arrests, regardless of probable cause. He produced the testimony of one of Boone County's policymaking officials saying that he has a policy of citing people for crimes in complete violation of the precedent of *Kuehl v. Burtis*, 173 F. 3d 646, 650-651 (8th Cir. 1999). Plaintiff was never convicted of his domestic battery offense, and any conviction that may or may not have existed in the first place was set aside, and Plaintiff did indeed provide the evidence (the Magistrate Judge's Report & Recommendation even spoke of the evidence Plaintiff provided).

Plaintiff asks that this Court set aside its judgment, since it is based on a clearly erroneous review of the docket, and allow this case to go to jury trial.

### Objection No. 1: Policy or custom of lawless arrests.

This Court has held that Plaintiff has produced no evidence of any official or unofficial policy or custom of arresting people without probable cause. In fact, he has.

Plaintiff has introduced the following evidence at the evidence hearing:

- A disinterested witness testifying that he was arrested once before because "I guess I didn't stand there and let [my wife] shoot me! That's why they arrested me."

- Bob King – the Captain of the Criminal Investigations Division, and thus, a policymaking official – himself admitting that he believed himself entitled to disregard plainly exculpatory evidence (specifically, security camera footage) when citing Plaintiff for disorderly conduct. This is in direct violation of the precedent of Kuehl v. Burtis, 173 F. 3d 646 (8th Cir. 1999), which states, in pertinent part, "because the *totality* of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has

probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." See *id* at 650.

- Evidence was submitted that a complaint was filed against Jason Beathky, the arresting agency, by the Plaintiff. However, it was never investigated, or even acknowledged by County officials. They stated that they did not know of the existence of any further complaints filed against Beathky, but that does not mean the complaints did not exist. With this evidence, a reasonable jury could make the finding that the County ignores complaints against her own officers.

The case of Kuehl v. Burtis, 173 F. 3d 646, 650-651 (8th Cir. 1999) states that, "because the *totality* of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."

Former Boone County Sheriff Danny Hickman testified at the evidence hearing and freely admitted that, when he was Sheriff, he gave his deputies discretion to pick and choose which evidence they want to consider (See ¶ 22(a) of the Objection to Report & Recommendation), discretion to decide who they want to interrogate (see ¶ 22(b) of the Objection to Report & Recommendation), and discretio to decide what evidence they wish to confiscate (see ¶ 22(c) of the Objection to Report & Recommendation).

So, as the Court can clearly see, there is sufficient evidence – including a policymaking official's own admission – that Boone County has a custom of ignoring complaints against

officers, even when those officers make arrests without probable cause.

Therefore, Plaintiff should be given a jury trial on this matter.

### Objection No. 2: The evidence of the ulterior motives

Plaintiff has, indeed, presented evidence, beyond "his personal speculation," as to the true reasons behind his arrest and criminal prosecution. Specifically, he has introduced evidence of the plea offer demanding that Plaintiff dismiss his lawsuits, which is relevant under Federal Rule of Evidence 408(b) to show evidence to prove bias or pejudice. It effectively amounts to a CONFESSION from the prosecutor as to his true intentions.

Furthermore, one of the Defense witnesses, Jason Jones, himself admitted that he had advance knowledge of Plaintiff's litigation history, something he only would have had a *motive* to know about if he knew Plaintiff was on his way to the jail.

The Plaintiff introduced not one, but TWO written confessions from Plaintiff's so-called "father," admitting that he was prepared to participate in the plot to have Plaintiff arrested.

Plaintiff produced an abundance of evidence showing that the State Judge, Gordon Webb, had a clear bias against Plaintiff.

Plaintiff's entitlement to a jury trial is governed by the precedent of White v. McKinley, 519 F. 3d 806, 816 (8th Cir. 2008), which states, in pertinent part, the following:

> "Because "the elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided. The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy.
> 
> ...
> Viewing the facts in a light most favorable to White, a reasonable juror could find that Tina and Richard reached a meeting of the minds to withhold exculpatory evidence from prosecutors and White. White offers evidence that Tina and Richard were romantically involved shortly after White was accused, and there is also evidence that Tina and Richard knew each other before the abuse allegations

even surfaced. Some evidence suggests that Richard reviewed and returned the potentially exculpatory diary to Tina and that the diary then disappeared. There is also evidence that Tina stood to gain financially from White's conviction. Because the elements of conspiracy are rarely established through means other than circumstantial evidence, and here there is sufficient evidence to support a reasonable inference of conspiracy, summary judgment was not appropriate."

This means that Plaintiff is entitled to a jury trial if he shows all of the following evidence:

- The arresting agency and the alleged victim knew each other personally.

- Potentially exculpatory evidence was destroyed by those working to condemn the plaintiff.

- The people seeking to condemn the plaintiff had a personal interest in the plaintiff's conviction.

All three of those pieces of evidence were submitted at the evidence hearing, and thus, according to binding precedent, Plaintiff has the right to a jury trial. He had produced the testimony of the arresting agency himself that the pillow – which potentially could have held exonerating evidence – was not confiscated. He produced evidence that Wes Bradford had a career interest in getting Plaintiff to dismiss lawsuits. He produced evidence that the alleged victim proclaimed to have a working relationship with government officials and was prepared to participate in a conspiracy.

All of these facts could lead a reasonable jury to find that there was a plot to have Plaintiff arrested, according to the precedent of *White v. McKinley*. The Court's judgment should be reversed for this reason.

### Objection No. 3: Plaintiff's conviction.

Next, the Court makes the finding that Plaintiff was convicted, and his conviction was never set aside. Both of those findings are patently against the record.

Plaintiff was never convicted; the sentencing order the Defendants introduced was a pure forgery. Plaintiff produced a certified copy of the REAL sentencing order as an attachment to Dkt. 160 (Pages 7-8). This certified copy of the sentencing order stated, not that Plaintiff was found guilty, but that "Pursuant to A.C.A. §§ 16-93-301 et seq., this Court, without making a finding of guilt or entering a judgment of guilt and with the consent of the Defendant defers further proceedings and places the Defendant on probation." Plaintiff was not convicted!

Even if Plaintiff's certified order is not irrefutable, it nevertheless creates a genuine dispute of fact because it conflicts with the Defendant's sentencing order.

Second, Plaintiff's records have, indeed, been expunged under § 16-93-303(b) ("Upon fulfillment of the terms and conditions of probation or upon release by the court prior to the termination period thereof, the defendant shall be discharged without court adjudication of guilt, whereupon the court shall enter an appropriate order that shall effectively dismiss the case, discharge the defendant, and expunge the record). Plaintiff attached a copy of that order as Page 9 of Dkt. 160.

Even the Magistrate Judge's Report & Recommendation acknowledged this much! Near the bottom of Page 3, the Magistrate Judge states "He maintains his conviction for the misdemeanor charge of battery in the third degree has been set aside. Stebbins has submitted an order filed May 12, 2014, granting his request to seal his file pursuant to Ark. Code Ann. § 16-93-301 (2014)."

Therefore, the Court should reverse its judgment and grant a jury trial.

### Objection No. 4: Judgment on the Pleadings for Insufficient Facts Plead

Next, the Court has made the finding that Plaintiff has not plead, in his Complaint, sufficient facts which, if proven, would create an official or unofficial policy or custom. This

finding was obviously made because the Court knows that the Magistrate Judge's suggestion that Plaintiff had not shown any such evidence at the evidence hearing was patently without merit.

This is also patently without merit. First of all, this Court has no authority to raise a motion to dismiss on the Defendant's behalf when they have not raised it themselves. See First Union Nat. Bank v. Pictet Overseas Trust, 477 F. 3d 616, 622 (8th Cir. 2007) ("Generally, failure to plead an affirmative defense results in a waiver of that defense"). This argument is not properly before the Court.

Second, it is simply untrue that Plaintiff had not plead those facts in his Complaint. Plaintiff did indeed allege plenty of facts to show a policy or custom.

By the Magistrate Judge's own admission, one way of showing a policy or custom is to show a pattern of conduct so repetitive that it effectively creates a policy or custom. See Dkt. 162, Page 24, Lines 10-19.

Plaintiff's Complaint included the following allegations:

> When I filed a grievance form against Jones, Jason Day - the Jail Administrator - stormed into my cell, screaming bloody murder saying I need to "stop with the bullshit" and saying such things as "ain't nobody pickin' on you!" "Ain't nobody violating your rights!" He would not let me get a word in edge wise. He then moved me to a new cell that was also in population, but kept me separate from the inmates who attempted to brutalize me, and returned my grievance form to me. In the space provided for him to provide a written response, he said I was unable to give any specific incidents of what Jones did. Oh, I was able to give some specific incidents; look at this complaint! He just wouldn't let me! This example is therefore second generation retaliation.

> Jason Day came by later that day and ~~faith, assuming some shred of possibility still remained.~~ The two counts of discrimination here are: 1) the failure to prosecute Jones, ~~because Day notes~~ ~~prior to the lawsuit I filed~~ and 2) attempting to charge me, instead. None of these would have happened had I not sued Jones for discrimination. ~~Any possibility that he might be acting in good~~
>
> I filed a grievance against Jones for that. To this day, I have not received a response to it.

These are clearly sufficient to support a jury finding of a policy or custom of ignoring inmate complaints against jail guards. See See Johnson v. Douglas County Medical Dept., 725 F.3d 825, 829 (8th Cir. 2013) ("To be sure, multiple incidents involving a single plaintiff could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials").

This Court should reverse its decision, since Plaintiff clearly did allege sufficient facts in his Complaint to support an unofficial policy.

### Objection No. 5: Aspergers' Status as Disability

Next, this Court has stated that it is disputed whether Asperger Syndrome is a disability under the ADA.

First and foremost, the Court said it best: It is *unclear*. Judgment as a matter of law should only be passed when there is no dispute of material fact.

By this Court's own admission, it is *disputed* whether Plaintiff's case of Aspergers meets all the essential elements to be covered under ADA Protection: Whether it is a physical or mental impairment that hinders one or more major life activities.

Numerous federal appellate courts have upheld that Aspergers qualifies as a disability under the ADA. See Mr. I. ex rel. LI v. ME. SCH. ADMN. DIST. NO. 55, 480 F. 3d 1 (1st Cir. 2007). See also Estate of Lance v. LEWISVILLE INDEPENDENT SCHOOL, 743 F. 3d 982 (5th Cir. 2014). See also Jakubowski v. Christ Hosp., Inc., 627 F. 3d 195 (6th Cir. 2010). See also Taylor v. Food World, Inc., 133 F. 3d 1419, 1422 (11th cir. 1998) ("Food World does not contest that Gary has a 'disability' as defined by the ADA")

The Court can even take judicial notice that, in Case No. 10-5125 in the United States District Court for the Western District of Arkansas, the University of Arkansas freely admitted that A) Plaintiff does indeed have Asperger Syndrome, and B) that is a disability qualifying for reasonable accommodations under the ADA. The only dispute in that case was whether the University of Arkansas provided the accommodations Plaintiff needed, and whether the accommodations Plaintiff requested were reasonable.

As such, Plaintiff could very easily convince a jury that Plaintiff is entitled to protection under the ADA. This Court should reverse its decision.

Speaking of the reasonableness of accommodations ...

### Objection No. 6: Reasonableness of Plaintiff's Requested Accommodations

On the matter of the Plaintiff's ADA claim, this Court is, once again, raising claims on the Defendants' behalf that were not raised by the Defendants themselves. This Court simply has no authority to do so. To do so makes this Court a legal advocate for the Defendant, and it is supposed to be an impartial tribunal.

Second, the Court's finding is based on a complete butchering of Plaintiff's actual testimony. Plaintiff never said that he needed the accommodation of "being allowed to break rules." Plaintiff would never even so much as *ask* for such an accommodation, under any circumstances, let alone *demand* it under threats of litigation.

The accommodation Plaintiff requested was that he be afforded an opportunity to apologize for his behavior, and to correct same, if he did not realize he did anything wrong. If Plaintiff knew that he was doing something wrong, then no accommodation would be appropriate.

Whether or not that accommodation presents an undue burden on the Defendants in a question of fact, meaning it is for the jury to decide. More importantly, "undue burden" is an affirmative defense ... a defense the Defendants have not preserved in their Answer. Even if they had preserved it, they would hold the burden of proof on that matter, not Plaintiff.

Plaintiff does not appreciate being intentionally misquoted by this Court, just so this Court has an excuse to throw Plaintiff's case out.

### Objection No. 7: Presumption of Fault from Happening of Injury/ Failure to Consider Totality of Circumstances

Last but not least, the Court states that "[e]ven if the Court were to assume that the arresting officer and County officials maintained a personal vendetta against Mr. Stebbins, the fact remains that an actual injured victim was present at the time of arrest, and there was evidence of blood in the home."

In making this argument, the Court is clearly of the opinion that, as long as there is significant incriminating evidence, then there is probable cause, regardless of the evidence the arresting agency may have noticed but ignored.

This is plainly against binding precedent. The case of Kuehl v. Burtis, 173 F. 3d 646,

650-651 (8th Cir. 1999) states that, "because the *totality* of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."

Former Boone County Sheriff Danny Hickman testified at the evidence hearing and freely admitted that, when he was Sheriff, he gave his deputies discretion to pick and choose which evidence they want to consider (See ¶ 22(a) of the Objection to Report & Recommendation), discretion to decide who they want to interrogate (see ¶ 22(b) of the Objection to Report & Recommendation), and discretion to decide what evidence they wish to confiscate (see ¶ 22(c) of the Objection to Report & Recommendation). If a jury agrees that Plaintiff is a credible witness, there is enough evidence to show that the arresting agency disregarded several pieces of evidence because he had already made up his mind that he wanted to arrest Plaintiff. Thus, when coupled with the aforementioned policy of giving deputies an unlawful amount of discretion, Plaintiff has, indeed, showed sufficient evidence that Jason Beathky, acting pursuant to a County Policy, arrested Plaintiff without probable cause.

## Conclusion

So, as this Court can clearly see, nearly every ground upon which it relied to dismiss Plaintiff's case is either patently against the record, or is subject to a great deal of dispute that should be left up to the jury to decide. Plaintiff should be entitled to a jury trial on this matter.

In the event that this Motion is denied, in whole or in part, Plaintiff reserves the right to file a Notice of Appeal.

Wherefore, premises considered, Plaintiff requests that this Court set aside its judgment

and set the case for jury trial. So requested on this, the 23rd day of April, 2015.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com